# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THERMAL SOLUTIONS, INC.,        )
                                          )

               **Plaintiff**      )      **CIVIL ACTION**

                                           )

**v.**                                      )

                                         )      **Case No. 2:08-cv-02220-JWL-DJW**

IMURA INTERNATIONAL U.S.A., INC., et al., )

                                         )

            **Defendants.**     )

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Compel (doc. 75) filed by Defendants Mamoru Imura, Imura International USA, Inc., and Vita Craft Corporation (collectively, "Defendants"). The Motion is fully briefed and is therefore ripe for consideration. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.      BACKGROUND

Plaintiff Thermal Solutions, Inc. filed this action asserting, *inter alia*, patent infringement claims against Defendants. Plaintiff holds U.S. Patent Nos. 6,232,585 ("the '585 Patent") and 6,320,169 ("the '169 Patent). These patents relate generally to systems for heating objects by electromagnetic induction that may also include the use of Radio Frequency Identification ("RFID") technology. Plaintiff alleges that it entered into license agreements by which Defendants could use the patented systems in conjunction with their sale of household cookware; that Defendants breached those agreements; and that Defendants then infringed the '585 and '169 Patents by continuing to use the patented systems in their products after Plaintiff terminated the license agreements. Plaintiff thus asserts patent infringement claims against Defendants pursuant to 35 U.S.C. § 271. Plaintiff also seeks a declaration that U.S. Patent No. 7,157,675 ("the '675 Patent"), issued to Defendant Imura and assigned to Defendant Imura International USA, Inc., is invalid. Defendants deny these

allegations and have asserted several counterclaims against Plaintiff. Defendants seek declarations of invalidity, non-infringement, and unenforceability with respect to the '585 and '169 Patents, as well as with respect to U.S. Patent No. 6,953,919 ("the '919 Patent"), another patent held by Plaintiff.

Defendants filed this Motion seeking to compel Plaintiff to provide complete and proper responses to Defendant Vita Craft's First Set of Interrogatories to Plaintiff, Nos. 6, 7, and 17 and to Defendant Vita Craft's First Request for Documents to Plaintiff, Nos. 58, 59, 63, 64, 66, and 67.[1] Defendants also move to compel Plaintiff to provide supplemental responses and documents to Interrogatory No. 5(a) and Document Request Nos. 3, 5, 12, 25, 26, 27, 28 and 42, which Defendants claim Plaintiff previously agreed to provide but, as of the date of the Motion, had not yet provided.

## II.  CONFERRING REQUIREMENTS

"The court will not entertain any motion to resolve a discovery dispute . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."[2] Therefore, before addressing the merits of Defendants' Motion, the Court must determine whether Defendants' counsel complied with the conferring requirements of the Federal Rules of Civil Procedure and the Rules of Practice and Procedure for the United States District Court for the District of Kansas.

Fed. R. Civ. P. 37(a)(1) provides in pertinent part, "[A] party may move for an order

---

[1] The Court notes that although only Defendant Vita Craft served the discovery at issue in this case, all three Defendants moved to compel responses to the discovery. For purposes of this Order, the Court need not address this issue because the defendant that served the discovery is among the defendants that filed the Motion.

[2] D. Kan. Rule 37.2.

compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[3] Under Fed. R. Civ. P. 37, the movant is required "to make a good faith attempt to resolve the discovery dispute [] before filing a motion to compel discovery responses."[4]

In addition, D. Kan. Rule 37.2 requires the movant to confer or make a "reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."[5] D. Kan. Rule 37.2 makes it clear that "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[6]

The Court has reviewed the relevant pleadings and exhibits setting forth the attempts of Defendants' counsel to confer with Plaintiff's counsel before filing the Motion. It appears to the Court that counsel for the parties exchanged letters, Plaintiff provided supplemental responses, and then counsel for the parties held two extended telephone conferences to discuss the discovery dispute. When the parties were unable to resolve the discovery dispute, Defendants filed this Motion.

The Court therefore concludes that the communications between Defendants' counsel and

---

[3] Fed. R. Civ. P. 37(a)(1).

[4] *Lohmann & Rauscher, Inc. v. YKK (U.S.A.), Inc.*, Civ. A. No. 05-2369-JWL, 2007 WL 677726, at *2 (D. Kan. Mar. 2, 2007).

[5] D. Kan. Rule 37.2.

[6] *Id.*

Plaintiff's counsel demonstrate that Defendants' counsel made reasonable efforts to confer with Plaintiff's counsel concerning the matters in dispute before filing the Motion. Having concluded that the conferring requirements were satisfied, the Court will address the merits of the Motion.

## III.     INTERROGATORY NO. 6

Interrogatory No. 6 asks Plaintiff to identify its "Confidential Information and trade secrets" disclosed by Defendant Imura in his patent applications. Specifically, Interrogatory No. 6 provides:

> Identify [Plaintiff's] Confidential Information and trade secrets, as used in [Plaintiff's] First Amended Complaint, within the Imura Patent Applications by describing the location (using, when available, the patent/application number, column number and line number and/or figure number) of each and every instance that [Plaintiff's] confidential information or trade secrets is disclosed in one of the Imura Patent Applications as these actions are alleged in paragraphs: 16, 17, 19, 34(c) and 34(i) of [Plaintiff's] First Amended Complaint.[7]

Defendants take issue with Plaintiff's answer to Interrogatory No. 6 concerning "Confidential Information."

Plaintiff answered Interrogatory No. 6, without objection, by first providing the definition of Confidential Information found in paragraph 19 of the license agreements between Plaintiff and Defendants:

> With respect to [Plaintiff's] Confidential Information, as defined in paragraph 19 of the License Agreements, Confidential Information is all information related to [Plaintiff's] RFID Technology or Patents that [Plaintiff] disclosed to [D]efendants and all information developed by [D]efendants or an Authorized Manufacturer during the term of the License Agreements."[8]

---

[7] Pl.'s First Supplemental Answers to Def. Vita Craft Corp.'s First Set of Interrogs. to Pl. (attached as Ex. D to Defs.' Mem. in Supp. of Mot. to Compel(doc. 76)) at 4.

[8] *Id.*

Plaintiff provided the entire definition of Confidential Information found in paragraph 19 of the license agreements in its response to Defendants' Motion, the relevant portion of which the Court quotes here:

> 19.  All information relating to the RFID Technology and the Patents that is or has been disclosed to Licensee by [Plaintiff] or on [Plaintiff's] behalf as well as information that Licensee or an Authorized Manufacturer develop as a result of this License or a manufacturing agreement will be 'Confidential Information,' subject to the limitations of this License. . ..[9]

After providing the definition for Confidential Information, Plaintiff went on to answer Interrogatory No. 6 by stating, "Because [Defendant] Imura's patent applications all contain information related to RFID technology and its use in RFID-equipped automated cooking systems (the very thing [D]efendants were supposed to be developing under license from [Plaintiff]), everything disclosed and the subject matter claimed in those applications is Confidential Information."[10]  Plaintiff completed its answer to Interrogatory No. 6 by stating that although it did not believe that it could "parse the words and phrases [D]efendants used in [the] patent applica-tions," it would provide a description of the location of Confidential Information within the patent applications.[11]  Plaintiff described the location of Confidential Information in U.S. Patent Application No. 10/833356 as follows: "[I]n the context of appearing in the patent itself, everything before the abstract is not Confidential Information.  Everything in the patent application from the

---

[9] Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 10.

[10]  Pl.'s First Supplemental Answers to Def. Vita Craft Corp.'s First Set of Interrogs. to Pl. (attached as Ex. D to Defs.' Mem. in Supp. of Mot. to Compel (doc. 76)) at 5.

[11] *Id.*

abstract through the claims is Confidential Information."[12]  Plaintiff provided a similar description of the location of Confidential Information for each of the patent applications.

Defendants argue that Plaintiff refused to answer Interrogatory No. 6 in that Plaintiff "refused to specifically identify what Confidential Information Defendants disclosed in the Imura Patent Applications."[13]  Defendants claim that in answering Interrogatory No. 6, Plaintiff ignored the definition of "Confidential Information" and "claim[ed] that virtually every word in the Imura Patent Applications is confidential."[14]  Defendants argue that by virtue of Plaintiff's broad description of the location of Confidential Information in the patent applications, Plaintiff also claims that "basic, scientific principles such as convection and conduction heating, thermodynamics, electricity, magnetism, metallurgy, [and] chemistry" constitute Confidential Information.[15]  Defendants further argue that Plaintiff "cannot in good faith take the positions it has with respect to what Confidential Information is disclosed in the Imura Patent Applications."[16]

In response, Plaintiff argues that it answered Interrogatory No. 6 by using the definition of Confidential Information found in the parties' license agreements.[17]  Plaintiff acknowledges that in answering Interrogatory No. 6 and describing the location of Confidential Information in the patent

---

[12] *Id.*

[13] Defs.' Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 10-11.

[14] *Id.* at 11.

[15] *Id.* at 12.

[16] *Id.* at 13.

[17] Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 10.

applications, it included bits of information that may be publicly known.[18] However, Plaintiff argues that "given the parties['] agreement about the definition of Confidential Information, [D]efendants were prohibited from aggregating those bits of information into a patent disclosure that will teach the world how to do what is described therein."[19] According to Plaintiff, Defendants simply "don't like [Plaintiff's] position" on this issue, "but that doesn't mean [Defendants] are entitled to a different answer. At best, it just means [Defendants] can later try to convince the Court or a jury that [Plaintiff] is unreasonable in its interpretation of what [Plaintiff] believes is a fairly unambiguous agreement."[20]

Having considered the parties' arguments, the Court concludes that Plaintiff has answered Interrogatory No. 6. Interrogatory No. 6 asks Plaintiff to identify the location of Plaintiff's Confidential Information, as that term is used in Plaintiff's First Amended Complaint, within the Imura Patent Applications as alleged in paragraphs 16, 17, 19, 34(c) and 34(i) of Plaintiff's First Amended Complaint. In essence, Interrogatory No. 6 asks Plaintiff to clarify its allegations in paragraphs 16, 17, 19, 34(c) and 34(i) of its First Amended Complaint regarding Confidential Information.

Plaintiff answered Interrogatory No. 6 and explained its contention that "given the parties' agreement regarding the scope of Confidential Information, the simple filing of the patent

---

[18] *Id.* at 12.

[19] *Id.*

[20] *Id.*

applications themselves is a disclosure of Confidential Information."[21]  Plaintiff then went on to

describe where in the patent applications it believes Defendants disclosed Confidential Information.

If Defendants do not agree with Plaintiff's contentions as to where Confidential Information was

disclosed or as to what constitutes Confidential Information, then Defendants can take that issue up

with the Court or jury at a later stage in this litigation.  However, Defendants cannot compel Plaintiff

to change its answer to Interrogatory No. 6 simply because they don't agree with Plaintiff's

contentions regarding Confidential Information.  The Court therefore denies Defendants' Motion

to compel Plaintiff to change its answer to Interrogatory No. 6.

## IV.    INTERROGATORY NO. 7.

Interrogatory No. 7 asks Plaintiff to, *inter alia*,

> Identify all documents and describe in detail all circumstances, communications, and
> facts that support the allegations of the Fourth Cause of Action in your First
> Amended Complaint, "Patent Infringement" including but not limited to, a Claim
> Chart setting forth the following: a) The identification of each claim of each patent
> in suit that is allegedly infringed[;] . . . b) For each asserted claim, identify the
> apparatus, product, device or method accused of infringing that claim by stating, the
> name or model number of the accused device or the name of the accused process or
> method; [and] c) Identify where each limitation of each asserted claim is found
> within each accused device or method . . ..[22]

Plaintiff objected to Interrogatory No. 7 on the grounds that it is overbroad in that it requests

Plaintiff to describe "all circumstances, communications, and facts" supporting its patent

---

[21] Pl.'s First Supplemental Answers to Def. Vita Craft Corps.'s First Set of Interrogs. to Pl. (attached as Ex. D to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 5; *see* Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 12.

[22] Pl.'s First Supplemental Answers to Def. Vita Craft Corps.'s First Set of Interrogs. to Pl. (attached as Ex. C to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 6-7.

infringement claims.[23] Plaintiff argued that under *Pepsi-Cola Bottling Group Co. of Pittsburgh, Inc. v. Bottling Group, LLC*,[24] Plaintiff is only required to provide the "material" or "principal" facts supporting its claim.[25] Plaintiff then went on to answer Interrogatory No. 7, subject to its objection, and provided a Claim Chart.

Defendants take no issue with Plaintiff's limitation of its answer to "material" or "principal" facts and, therefore, the Court need not address this objection. Defendants do, however, argue that Plaintiff failed to fully answer Interrogatory No. 7 because it failed to identify in the Claim Chart where each limitation of each asserted claim is found within each accused device or method.[26] In support of this argument, Defendants call the Court's attention to the left column of the Claim Chart provided by Plaintiff. Defendants claim that, in certain instances, Plaintiff identified "where" each limitation of each asserted claim is found within each accused device or method by copying a description of Defendants' RFIQ® Robotic Cooking System from Defendants' website and pasting that description into the left column of the Claim Chart.[27] Defendants argue that this manner of identifying "where" the requested information is located fails to fully and properly answer Interrogatory No. 17.[28]

---

[23] *Id.* at 7.

[24] No. 07-2315-JAR, 2008 WL 234326 (D. Kan. Jan. 28, 2008).

[25] Pl.'s First Supplemental Answers to Def. Vita Craft Corps.'s First Set of Interrogs. to Pl. (attached as Ex. C to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 7.

[26] Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 5.

[27] *Id.*

[28] *Id.*

In response to Defendants' Motion, Plaintiff does not dispute that it used Defendants' website to answer Interrogatory No. 7, nor does Plaintiff appear to argue that it identified exactly where each limitation of each asserted claim is found within each accused device or method. Rather, Plaintiff argues,

> Despite [D]efendants' professed ignorance of the basis for [Plaintiff's] infringement contention, the true factual background amply demonstrates that they have myriad 'ways to know' how their accused device - which [Plaintiff] presumes they truthfully described on their website - infringes the various structure and method claims as described by [Plaintiff] in its supplemental answer to interrogatory number 7. Given what is described below (which is just a sampling of the evidence), [Plaintiff] believes its answer is satisfactory and [D]efendants' [M]otion should be denied.[29]

Plaintiff then goes on to provide a lengthy description of its position as to the factual background in this case.

The Court has reviewed the Claim Chart and considered Plaintiff's arguments and fails to see how the fact that Defendants may have "myriad 'ways to know' how their accused device . . . infringes the various structure and method claims as described by [Plaintiff]"[30] relieves Plaintiff from its obligation to fully and completely answer Interrogatory No. 7 under oath.[31] The Court finds that Defendants are entitled to a complete and fully responsive answer to Interrogatory No. 7, which includes a Claim Chart that better describes where each limitation of each asserted claim is found

---

[29] Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 3.

[30] *Id.*

[31] Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

within each accused device or method. The Court therefore grants Defendants' Motion to compel

Plaintiff to fully respond to Interrogatory No. 7.[32]

## V.    INTERROGATORY NO. 17

Interrogatory No. 17 states:

> For each license or other agreement by which [Plaintiff] has granted a license or
> other right to use each of U.S. Patent Nos. 6,232,585, 6,320,169, 6,953,919,
> [Plaintiff's] related RFID technology, Confidential Information, and trade secrets in
> the manufacture, distribution, or sale of cookware or charging units related to
> cookware, identify the amount of royalties [Plaintiff] has received.[33]

Defendants, claiming that Plaintiff objected to Interrogatory No. 17 as not being relevant, seek to

compel Plaintiff to answer Interrogatory No. 17.[34] The Court has reviewed Plaintiff's answer to

Interrogatory No. 17 and can find no such objection. In fact, it appears to the Court that Plaintiff

answered Interrogatory No. 17 without any objections.

The Court looked to the parties' briefing to uncover the discovery dispute regarding

Interrogatory No. 17 and was unable to find any briefing specifically discussing Interrogatory No.

17. Although Defendants generally identified Interrogatory No. 17 as a discovery request that

Plaintiff allegedly objected to and refused to answer, Defendants never actually specifically

discussed Interrogatory No. 17 or the parties' dispute regarding Interrogatory No. 17 in their Motion.

---

[32] Plaintiff claims it tried to convince Defendants that the demanded Claim Chart was premature because it depended on the construction of the claim language, which the Court had yet to determine. The Court notes that the *Markman* hearing has now been held and that District Judge John W. Lungstrum has entered his Memorandum and Order determining the construction of various terms found in the relevant patents' claims (doc. 118). Thus, Plaintiff's concern regarding the construction of the claim language should no longer be an issue.

[33] Pl. Thermal Solutions, Inc.'s Answers to Def. Vita Craft Corp.'s First Set of Interrogs. to Pl. (attached as Ex. G to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 19.

[34] Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 14.

Instead, Defendants grouped several document requests and Interrogatory No. 17 together, called them "Defendants' Royalty-Related Discovery," and then argued why their Royalty-Related Discovery was relevant. In grouping the discovery together, Defendants never explained to the Court the nature of the dispute concerning Interrogatory No. 17.

It wasn't until the Court reviewed the exhibits attached to Defendants' Motion and found the letters exchanged by the parties' respective counsel that the Court discovered the underlying issue - the parties appear to disagree regarding the interpretation of the wording of Interrogatory No. 17. Plaintiff believes that it has fully answered Interrogatory No. 17 based on its understanding of the wording, and Defendants argue that Plaintiff has misinterpreted Interrogatory No. 17.

This dispute, however, was not brought before the Court for review and the Court will not search through the parties' letters to find a dispute and then resolve it. Focusing on the issue raised by Defendants, the Court finds that Plaintiff answered Interrogatory No. 17 without objecting on the grounds of relevance. The Court therefore denies Defendants' Motion to compel Plaintiff to change its answer to Interrogatory No. 17.

## VI.    DOCUMENT REQUESTS

Defendants seek to compel Plaintiff to provide documents responsive to Document Request Nos. 58, 59, 63, 64, 66, and 67. The briefing on the discovery disputes regarding these document requests is far from ideal. The Court touched on this issue in discussing Interrogatory No. 17. Instead of providing clear and precise arguments concerning each document request in dispute, Defendants grouped the requests together, referred to them collectively as "Defendants' Royalty-Related Discovery," and then argued why they were entitled to responses to their Royalty-Related Discovery. Plaintiff's response to Defendants' Motion follows a similar format. By arguing about

the discovery dispute in such a broad, collective manner, the parties have left it to the Court to sift through their briefing and determine which portion of the briefing is relevant to the dispute concerning each document request. Indeed, the Court believes that this broad, collective approach to discussing the parties' discovery dispute is likely the reason that the parties never actually discussed the true nature of the dispute concerning Interrogatory No. 17.

Nonetheless, the Court has sifted through the parties' arguments and made a determination concerning each document request in dispute. Borrowing the Defendants' term, the Court will sometimes collectively refer to Document Request Nos. 58, 59, 63, 64, 66, and 67 as "Defendants' Royalty-Related Discovery."[35] Defendants' Royalty-Related Discovery seeks the following documents from Plaintiff:

No. 58: "All licenses for the TSI Patents and Applications, and other documents relating to any royalties, licensing revenues or any other moneys received by [Plaintiff] from any person in connection with any of the TSI Patents and Applications."[36]

No. 59: "All agreements between [Plaintiff] and a third party by which [Plaintiff] granted the third party any license or other right to use any patent or patent application of [Plaintiff]."[37]

No. 63: "All documents that reflect the value of any of the TSI Patents and

---

[35] However, the parties should note that unlike Defendants, the Court is not including Interrogatory No. 17 in its definition of "Defendants' Royalty-Related Discovery."

[36] Pl. Thermal Solutions, Inc.'s Resps. to Def. Vita Craft Corp.'s First Req. for Docs. to Pl. (attached as Ex. H to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 21.

[37] *Id.*

Applications at any time since January 1, 2000."[38]

No. 64: "All documents that reflect the value of any of [Plaintiff's] RFID technology, Confidential Information, or trade secrets, as those terms are used in [Plaintiff's] First Amended Complaint at any time since January 1, 2000."[39]

No. 66: "All documents that contain, reflect, memorialize, or discuss any valuation, or the value, of [Plaintiff] or its assets since January 1, 2000."[40]

No. 67: Plaintiff's "financial statements, including but not limited to its balance sheets and income statements, for each year since January 1, 2000."[41]

Plaintiff objected to Defendants' Royalty-Related Discovery on the grounds that it is overbroad, vague, and irrelevant.[42] Plaintiff failed, however, to assert its overbroad and vague objections in its response to Defendants' Motion.[43] Accordingly, the Court finds that Plaintiff abandoned these objections.[44] Thus, the Court will only consider Plaintiff's relevance objection.

---

[38] *Id.* at 23.

[39] *Id.*

[40] *Id.* at 24.

[41] *Id.*

[42] Pl. Thermal Solutions, Inc.'s Resps. to Def. Vita Craft Corp.'s First Req. for Docs. to Pl. (attached as Ex. H to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 21-24.

[43] Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 13-14.

[44] When ruling on a motion to compel, the Court will consider only those objections that have been timely asserted and then relied upon in response to the motion to compel. *See Moses v. Halstead*, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006); *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005). Objections initially raised but not relied upon in a response to a motion to compel will be deemed abandoned. *See Moses*, 236 F.R.D. at 672 n.8; *Cardenas*, 232 F.R.D. at 380 n.15.

Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .."[45] "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the subject matter to the action."[46]

> When the discovery sought appears relevant, the party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[47]

Conversely, "[w]hen the relevancy of propounded discovery is not apparent its proponent has the burden [] to show the discovery relevant."[48]

Because the parties have presented their arguments in a collective manner, the Court will similarly address their arguments. The Court will first address Document Request Nos. 58 and 63 together, and will then address Document Request Nos. 59, 64, 66, and 67 together.

## A.    Document Request Nos. 58 and 63

The Court has reviewed Document Request Nos. 58 and 63 and finds that the relevance of these requests is not readily apparent because the Court cannot determine the meaning of the defined

---

[45] Fed. R. Civ. P. 26(b)(1).

[46] *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 685-86 (D. Kan. 2000)(citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).

[47] *Etienne*, 185 F.R.D. at 656-57 (quoting *Aramburu v. Boeing Co.*, No. 93-4064-SAC, 1994 WL 810246, at *1 (D. Kan. Sept. 22, 1994)) (internal quotations omitted).

[48] *Id.* at 657 (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan.1996)).

term "TSI Patents and Applications," which is used in both requests. The Court looked to Defendant Vita Craft Corp.'s First Request for Production to Plaintiff for a definition of "TSI Patents and Applications" and discovered that this portion of the requests was not provided to the Court. The only portion of Defendant Vita Craft Corp.'s First Request for Production to Plaintiff regarding this term is an objection to the definition of "TSI Patents and Applications" by Plaintiff, the entirety of which is not included because the objection continues on to a second page which was not provided to the Court. Unlike the other defined terms relevant to this Motion (such as Confidential Information), the Court can find no evidence in the parties' briefing or other relevant pleadings of the definition of "TSI Patents and Applications." Without such definition, the Court can only conclude that the relevance of the requests is not readily apparent.

Because the relevance of Document Request Nos. 58 and 63 is not readily apparent, Defendants have the burden of establishing such relevance.[49] The Court concludes that in failing to provide the Court with the definition of "TSI Patents and Applications," Defendants have not satisfied their burden. The Court therefore sustains Plaintiff's relevance objection to Document Request Nos. 58 and 63. Accordingly, the Court denies Defendants' Motion to compel Plaintiff to respond to Document Request Nos. 58 and 63.

### B. Document Request No. 59, 64, 66, and 67.

Having reviewed Document Request No. 59, the Court finds that the relevance of Document Request No. 59 is not readily apparent. Document Request No. 59 asks for *all* agreements between Plaintiff and a third party by which Plaintiff granted the third party a license or other right to use *any* patent or patent application of Plaintiff. It is not readily apparent how this broad request for any

---

[49] *Id.*

license agreements between Plaintiff and any third party regarding the right to use any of Plaintiff's patents or patent applications is relevant to the few patents at issue in this case.

The Court has also reviewed Document Request Nos. 64 and 66, which ask Plaintiff for documents concerning valuation, including the value of Plaintiff's RFID technology, Confidential Information, or trade secrets, as well as the value of Plaintiff or its assets. The Court finds that the relevance of these documents is not readily apparent.

Finally, the Court has reviewed Document Request No. 67, which seeks Plaintiff's financial statements. Again, the Court finds that the relevance of this information is not readily apparent.

Because the relevance of Document Request Nos. 59, 64, 66, and 67 is not readily apparent, Defendants have the burden of establishing the relevance of these requests.[50] Defendants argue that their Royalty-Related Discovery, which includes Document Request Nos. 59, 64, 66, and 67, is relevant to (1) the determination of Plaintiff's damages based on a reasonable royalty; (2) Defendants' counterclaim that Plaintiff's '585, '169, and '919 patents are invalid due to obviousness; and (3) Defendants' allegation that Plaintiff's '585 and '169 patents are unenforceable due to Plaintiff's misuse of those patents. The Court will address each of these arguments in turn.

### 1. *Reasonable Royalty*

In answering Interrogatory No. 10 regarding damages, Plaintiff stated that it intends to seek damages in the amount of a "reasonable royalty" in connection with its patent infringement claim.[51] Defendants argue that the Royalty-Related Discovery is relevant to a determination of a reasonable

---

[50] *Id.*

[51] Pl. Thermal Solutions, Inc.'s Answers to Def. Vita Craft Corp.'s First Set of Interrogs. to Pl. (attached as Ex. F to Mem. in Supp. of Defs.' Mot. to Compel (doc. 76)) at 14.

royalty. Defendants rely on *Georgia-Pacific Corp. v. United States Plywood Corp.*[52] in support of this argument:

> If there is not an established royalty[,] . . . then a reasonable royalty is that to which the plaintiff and the defendant might have agreed during a hypothetical negotiation at the time infringement began. [] In making this determination, the Federal Circuit endorses, among other methods, the fifteen-factor approach first set out in *Georgia-Pacific*.[53]

In response, Plaintiff argues that there is no need to obtain discovery on determination of a reasonable royalty because the parties' license agreements provide an established royalty and, therefore, determination of a reasonably royalty is not necessary.[54] Plaintiff further argues that Defendants' Royalty-Related Discovery is unnecessary and irrelevant because, "[i]f [Plaintiff] prevails on its claim for infringement, the parties' agreement is the only thing on which [Plaintiff] intends to base its request for a 'reasonable royalty.'"[55] Defendants disagree with Plaintiff's contention that the parties' license agreements provide an established royalty and argue that they are entitled to present their argument to the fact-finder as to the calculation of a reasonable royalty.

Although the parties focus much of their arguments on whether an established royalty exists, the Court concludes that it need not determine at this juncture whether there is an established royalty. Under Rule 26(b), Defendants are entitled to discovery regarding any nonprivileged matter

---

[52] 318 F.Supp. 1116 (S.D.N.Y. 1970).

[53] *Freeman v. Gerber Products Co.*, 450 F.Supp. 2d 1248, 1260-61 (D. Kan. 2006) ( citations omitted); *see* Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 16.

[54] Pl.'s Mem. in Opp'n to Defs.' Mot. to Compel (doc. 91) at 13.

[55] *Id.*

that is relevant to any party's claim or defense.[56]  Here it is clear that the parties' claims and defenses include a dispute as to the existence of an established royalty and the determination of a reasonable royalty.  Plaintiff cannot preclude discovery on the issue of determination of a reasonable royalty simply by claiming that such calculation is not necessary because an established royalty exists.  The Court agrees with Defendants' assertion that they are entitled to present their arguments to the fact-finder that an established royalty does not exist and, therefore, that a reasonable royalty must be determined. Thus, to decide whether Defendants are entitled to a response to their Royalty-Related Discovery, the Court need only determine whether their Royalty-Related Discovery is relevant to the determination of a reasonable royalty.

Defendants point to two of the factors identified by the court in *Georgia-Pacific* in support of their argument that Defendants' Royalty-Related Discovery is relevant to the determination of a reasonable royalty: (1) the royalties received by the patentee for the licensing of the patent in suit, and (2) the established profitability of the product made under the patent; its commercial success; and its current popularity.[57]  Thus, the Court must determine whether Document Request Nos. 59, 64, 66, and 67 seek documents relevant to either of these factors.

Document Request No. 59 seeks any license agreement between Plaintiff and any third party concerning any of Plaintiff's patents or patent applications.  The Court finds that although the entire universe of documents requested in Document Request No. 59 is not relevant to the determination of a reasonable royalty, it does appear that a portion of those documents are relevant to the first factor identified in *Georgia-Pacific*: royalties received by Plaintiff for the licensing of the patents

---

[56] Fed. R. Civ. P. 26(b)(1).

[57] Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 16-17.

involved in this suit.  Plaintiff has a duty to respond to Document Request No. 59 to the extent it is not objectionable.[58]  The Court will therefore compel Plaintiff to respond to Document Request No. 59 limited as follows: All agreements between Plaintiff and a third party by which Plaintiff granted the third party any license or other right to use any of Plaintiff's patents or patent applications involved in this lawsuit.

Document Request No. 64 seeks documents reflecting the value of Plaintiff's RFID technology, Confidential Information, or trade secrets;  Document Request No. 66 seeks documents reflecting, memorializing, or discussing the value of Plaintiff or its assets; and Document Request No. 67 seeks Plaintiff's financial statements. Defendants fail to explain how these requests are relevant to either (1) the royalties received by the patentee for the licensing of the patent in suit, or (2) the established profitability of the product made under the patent; its commercial success; and its current popularity.  Defendants also fail to explain how Document Request Nos. 64, 66, and 67 are relevant to any of the other factors identified in *Georgia-Pacific*.  The Court therefore concludes that Defendants have not met their burden of establishing how Document Request No. 64, 66, and 67 are relevant to the determination of a reasonable royalty.

Thus, the Court must look to Defendants' remaining arguments regarding the relevance of Document Request Nos. 64, 66, and 67 - obviousness and misuse.

### 2.    *Obviousness*

Defendants argue that their Royalty-Related Discovery, which includes Document Request Nos. 64, 66, and 67, is relevant to their contention that Plaintiff's '585, '169, and '919 patents are

---

[58] Fed. R. Civ. P. 34(b).

invalid due to obviousness.[59]  In support of this argument, Defendants rely on *Graham v. John Deere Co. of Kansas City*[60] where, according to Defendants, "the Supreme Court indicated that commercial success of an invention is objective evidence regarding the issue of nonobviousness."[61]  Defendants claim that their Royalty-Related Discovery "related to the inventions covered by those three patents is relevant to the issue of obviousness."[62]

The Court has reviewed Document Request Nos. 64, 66, and 67 and finds that Defendants have not shown how these requests are related to the inventions covered by the patents at issue in this case and the commercial success of those inventions.  Rather, these requests seek documents reflecting the value of Plaintiff's RFID technology and Confidential Information, the value of Plaintiff or its assets, and Plaintiff's financial statements.  The Court is not persuaded by Defendants' conclusory statement that these requests are somehow related to inventions covered by the patents at issue in this case and therefore are relevant to the issue of obviousness.  The Court therefore concludes that Defendants have failed to show that Document Request Nos. 64, 66, and 67 are relevant to the issue of obviousness.

Thus, the Court turns to Defendants' final argument as to why Document Request Nos. 64, 66, and 67 are relevant - misuse.

### 3.      *Misuse*

---

[59] Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 17; *see also* Answers of Defs. Imura International U.S.A., Inc., Vita Craft Corporation and Mamoru Imura and Countercls. of Defs. Imura International U.S.A., Inc. and Vita Craft Corporation (doc. 45) at ¶ 74.

[60] 383 U.S. 1, 13-14 (1966).

[61] Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 17.

[62] *Id.*

Defendants argue that their Royalty-Related Discovery, which includes Document Request Nos. 64, 66, and 67, is relevant to their contention that Plaintiff's '585, '169, and '919 patents are unenforceable due to Plaintiff's misuse of those patents.[63]  Defendants allege that the patents are unenforceable by the doctrine of patent misuse because: (1) Plaintiff attempted to improperly expand the scope and/or duration of the patents, (2) Plaintiff attempted to extract a royalty based on revenues that are unrelated to the patents, and (3) Plaintiff attempted to enforce patents that it knows to be invalid, void, unenforceable, or not infringed.[64]  Defendants argue that their Royalty-Related Discovery seeks "information related to [Plaintiff's] licensing practices of the '585, '169, and '919 patents and, therefore, the information requested is directly relevant to Defendants' allegations of misuse."[65]

The Court has reviewed Document Request Nos. 64, 66, and 67, which seek documents related to the valuation of Plaintiff's RFID technology and Confidential Information, the valuation of Plaintiff or its assets, and Plaintiff's financial statements, and finds that Defendants have not shown how they are relevant to Defendants' allegations of misuse.  The Court is not persuaded by Defendants' conclusory argument that these requests are relevant to Plaintiff's licensing practices.  The Court concludes that Defendants have failed to show that Document Request Nos. 64, 66, and 67 are relevant to the issue of misuse.

---

[63] *Id.*; *see also* Answers of Defs. Imura International U.S.A., Inc., Vita Craft Corporation and Mamoru Imura and Countercls. of Defs. Imura International U.S.A., Inc. and Vita Craft Corporation (doc. 45) at ¶ 85.

[64] Answers of Defs. Imura International U.S.A., Inc., Vita Craft Corporation and Mamoru Imura and Countercls. of Defs. Imura International U.S.A., Inc. and Vita Craft Corporation (doc. 45) at ¶ 85.

[65]  Mem. in Supp. of Defs.' Mot. to Compel (doc. 76) at 17.

The Court therefore concludes that Defendants have failed to satisfy their burden of establishing the relevance of Document Request Nos. 64, 66, and 67. Accordingly, the Court sustains Plaintiff's relevance objection to these requests and denies Defendants' Motion to compel responses to Document Request Nos. 64, 66, and 67.

## VII. SUPPLEMENTAL DISCOVERY

Defendants also ask the Court, "[o]ut of an abundance of caution," to compel Plaintiff to provide supplemental responses and documents that Defendants claim Plaintiff previously agreed to provide but, as of the date of the Motion, it had not provided. Specifically, Defendants claim that Plaintiff agreed to supplement its responses to Interrogatory No. 5(a) and Document Request Nos. 3, 5, 12, 25, 26, 27, 28, and 42. Defendant asks the Court, to the extent that Plaintiff does not provide these supplemental responses and documents by the time the Court rules on the Motion, to enter an order requiring Plaintiff to provide the supplemental responses and documents.

Plaintiff's response to the Motion, however, is silent as to this issue and Defendant's reply brief does not mention the supplemental responses or documents. Thus, the Court is without sufficient information as to whether an order requiring supplementation is necessary or warranted. Thus, the Court will deny Defendants' request for supplementation of these discovery requests without prejudice. If necessary, Defendants may file a motion to compel supplementation of Plaintiff's responses to Interrogatory No. 5(a) and Document Request Nos. 3, 5, 12, 25, 26, 27, 28, and 42 within 10 days of the date of this Order.

## VIII. EXPENSES

Defendants ask the Court to order Plaintiff to pay their costs and attorneys' fees incurred in filing their Motion. Under Fed. R. Civ. P. 37, if a motion to compel discovery is "granted in part

and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion."[66] The Court finds that in this case it is appropriate to have each party bear their own expenses incurred in connection with the Motion.

## IX.    CONCLUSION

For the foregoing reasons, the Motion is granted in part and denied in part.

Defendants' Motion to compel Plaintiff to change its answer to Interrogatory No. 6 is denied.

Defendants' Motion to compel Plaintiff to fully respond to Interrogatory No. 7 is granted.

Defendants' Motion to compel Plaintiff to change its answer to Interrogatory No. 17 is denied.

Defendants' Motion to compel Plaintiff to respond to Document Request Nos. 58, 63, 64, 66, and 67 is denied.

Defendants' Motion to compel Plaintiff to respond to Document Request No. 59, as limited by the Court, is granted. The Court will compel Plaintiff to respond to Document Request No. 59 limited as follows: All agreements between Plaintiff and a third party by which Plaintiff granted the third party any license or other right to use any of Plaintiff's patents or patent applications involved in this lawsuit.

---

[66] Fed. R. Civ. P. 37(a)(5)(C).

Finally, Defendants' motion for an order compelling Plaintiff to supplement its responses to Interrogatory No. 5(a) and Document Request Nos. 3, 5, 12, 25, 26, 27, 28, and 42 is denied without prejudice. If necessary, Defendants may file a motion to compel supplementation of Plaintiff's responses to Interrogatory No. 5(a) and Document Request Nos. 3, 5, 12, 25, 26, 27, 28, and 42 **within 10 days** of the date of this Order.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel (doc. 75) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that the parties shall bear their own expenses incurred in connection with the Motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, this 4th day of December 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc: All counsel and *pro se* parties.