IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| THERMAL SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-2220-JWL |
| | ) | |
| IMURA INTERNATIONAL U.S.A., INC., | ) | |
| VITA CRAFT CORPORATION, and | ) | |
| MAMORU IMURA, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Thermal Solutions, Inc. ("TSI") has brought patent claims under federal law and other claims under Kansas law against Imura International USA, Inc. ("II-USA") and its subsidiary, Vita Craft Corporation ("Vita Craft"), as well as against Mamoru Imura, who is alleged to control both corporate defendants. II-USA and Vita Craft (hereinafter collectively referred to as "defendants") have brought counterclaims against TSI, including claims by which they seek declarations of invalidity, non-infringement, and unenforceability with respect to three patents held by TSI. This matter presently comes before the Court on TSI's motion for summary judgment on defendants' declaratory judgment counterclaims, on the basis that such claims do not satisfy the "case or controversy" requirement of Article III of the United States Constitution and the Declaratory Judgment Act (Doc. # 187). For the reasons set forth below, the Court

**denies** the motion for summary judgment.

## I. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon

his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**II.     Analysis**

Defendants seek declarations of invalidity, non-infringement, and non-enforceability with respect to three patents held by TSI.[1] At various times in the past, TSI has alleged that defendants infringed those three patents. TSI argues, however, that in this case it alleges only *past* infringement by defendants and that it does not contend

---

[1] TSI has not distinguished the three patents or treated them separately for purposes of its argument in favor of summary judgment. Therefore, the Court has not considered the justiciability of the counterclaims separately for each patent, but has instead addressed TSI's argument as it relates to the counterclaims as a whole.

3

that defendants are *presently* engaged in any infringing activity.[2] TSI also argues that evidence shows that defendants do not plan to engage in the allegedly infringing activity—the manufacture or sale of certain cookware using RFID technology—in the future. Thus, TSI argues that there is no present case or controversy as required by Article III for the Court's subject matter jurisdiction over defendants' declaratory judgment counterclaims. TSI seeks summary judgment on those counterclaims on this basis.

Therefore, TSI's motion turns on whether, as a matter of uncontroverted fact, defendants do not intend to engage in the allegedly infringing activity in the future.[3] TSI relies on two pieces of evidence to support its position: a statement in a July 2008

---

[2]The pretrial order does not make clear that TSI alleges only past infringement; in fact, TSI alleges in the pretrial order that products are sold "to this day" in Japan through an affiliate company. Nevertheless, the Court will accept TSI's limitation of its claim to past infringement only.

[3]"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court has made clear that a party need not engage in the allegedly infringing activity (and risk treble damages for infringement) simply to create a case or controversy under Article III to support a declaratory judgment claim relating to a patent. *See id.* at 128-37. Thus, the mere fact that defendants ceased their infringing activity (according to TSI) does not necessarily mean that a case or controversy does not exist here. TSI, having previously brought claims against defendants for infringement, does not dispute that a case or controversy existed in the past with respect to defendants' counterclaims; rather, TSI contends that no case or controversy presently exists because defendants have abandoned the allegedly infringing activity and does not intend to resume that activity in the future.

4

affidavit by Gary Martin, defendant Vita Craft's president, that Vita Craft's RFID project was "dead"; and deposition testimony by Michael Johnson, defendants' designee for purposes of Fed. R. Civ. P. 30(b)(6), indicating a lack of discussion by defendants concerning the manufacture or sale of RFID products. In response, defendants have submitted a new affidavit in which Mr. Martin states as follows: as of February 2006, when TSI purported to terminate the parties' license agreements, Vita Craft had spent over $6,000,000 in the development, manufacture, and sale of its cooking systems, including amounts paid to TSI as licensing fees and for software development; that Vita Craft entered into agreements and negotiated with other companies to manufacture and sell the products; that Vita Craft made and sold the product; that Vita Craft had over $3,700,000 in inventory and work-in-process for the product at the time of the termination, which Vita Craft has maintained; that Vita Craft stopped making and selling the product because TSI terminated the license agreements and threatened claims of patent infringement; and that Vita Craft intends to resume manufacturing and selling the product with its existing inventory and work-in-process if defendants prevail on their declaratory judgment counterclaims. Thus, Mr. Martin's recent affidavit, which must be credited pursuant to the governing summary judgment standard, rebuts TSI's argument and demonstrates the existence of a case or controversy relating to defendants' counterclaims.

TSI argues that Mr. Martin is wrong when he states that defendants ceased the allegedly infringing activity because of TSI's termination, in light of evidence that

5

defendants did not in fact cease such activity immediately after the termination in February 2006. That evidence does not undermine Mr. Martin's statement of the *reason* for defendants' cessation of activity, however, and relates only to the timing of that cessation. TSI concedes, at the foundation of its summary judgment argument, that defendants have ceased the allegedly infringing activity. Mr. Martin states that the reason for that cessation is TSI's termination of the license agreements and threats of infringement claims. TSI has not provided any reason why that statement should not be credited for purposes of summary judgment.

Thus, the Court turns to the evidence regarding defendants' intent to resume their production and sale activities in the future. TSI argues that Mr. Martin should not be permitted now to contradict his prior affidavit, but the two affidavits are not actually in conflict. In the first affidavit, Mr. Martin related a conversation from a settlement meeting with TSI, during which he stated that Mr. Imura had not abandoned Vita Craft, but had "moved back to Japan because the RFID project was 'dead,' and that Mr. Imura moved back to Japan to focus on Vita Craft's core business of selling non-RFID cookware made at Vita Craft and sold in Japan." Thus, Mr. Martin did not state in the first affidavit (or confirm a prior statement) that Vita Craft did not intend ever to resume its involvement with RFID products or, at the least, to sell off its existing RFID inventory. Moreover, Mr. Martin explained in his subsequent affidavit that, at the settlement meeting, he informed TSI "that the RFID project between the parties was dead." The Court will not disregard Mr. Martin's statement that Vita Craft intends to

6

resume its RFID activity as inconsistent with his prior statement that the project between the parties was "dead".

Nor will the Court disregard Mr. Martin's recent affidavit based on defendants' Rule 30(b)(6) deposition testimony. In that deposition, Mr. Johnson testified as follows:

> Q. Are there any plans to begin using RFID technology in any products?
>
> . . .
>
> A. Probably not.
>
> Q. You're not aware of any plans . . . that Vita Craft Corporation has to design, develop, manufacture or sell a product that utilizes RFID technology as a means of control the cooking process [*sic*]; are you?
>
> . . .
>
> A. Not at this moment.
>
> Q. Have there been any discussions about possibly making, designing or developing any products based on the technology described in either of the first two patent applications that we've discussed?
>
> . . .
>
> A. Not at this time.
>
> Q. Right, but have there been any discussions over the past – since the time that Thermal Solutions terminated the license agreements?
>
> A. None that I'm aware of.
>
> Q. And you're the head of manufacturing, research and development; right?
>
> A. Yes.

> Q. So if there were significant discussions about manufacturing such products you would know about them; right?
>
> A. I would think so.[4]

Thus, defendants' designee testified, without any certainty, that he did not know of plans or discussion, at that moment, to resume making or selling RFID products. That testimony falls short of a binding, unequivocal statement that Vita Craft would not resume such activity if defendants' prevail on their counterclaims. The Court thus rejects TSI's argument that Mr. Martin's recent affidavit should be disregarded as "conclusory and self-serving with no factual basis." In particular, the facts of the money spent by Vita Craft on this product and its preservation of its extensive inventory and work-in-process—along with Mr. Martin's position with Vita Craft—provide ample factual basis for the statements in the affidavit.

Finally, the Court rejects TSI's argument, made for the first time in its reply brief, that defendants cannot resume manufacturing this product because the parties' license agreements prohibit defendants' use of TSI's confidential information after termination of the license agreements. Defendants might intend to resume such activity even if it would constitute a breach (perhaps even accounting for such liability as a cost of doing business), and TSI has not shown that such intent could not still give rise to an

---

[4] Defendants' counsel interposed objections to these questions as beyond the scope of TSI's deposition notice pursuant to Rule 30(b)(6), but defendants have not pursued that objection in its response to TSI's motion for summary judgment.

8

actual controversy between the parties.[5] Moreover, defendants have expressed an intent, at the least, to sell its existing inventory, and TSI has not shown how that conduct would involve the use of confidential information in violation of the license agreements.

Viewing the evidence in the light most favorable to defendants, the Court concludes that an actual case or controversy exists here with respect to defendants' declaratory judgment counterclaims.[6] Accordingly, the Court denies TSI's motion for summary judgment.

---

[5]Of course, the Court does not express any opinion concerning whether such conduct would in fact represent a breach of any agreement between the parties.

[6]In light of this ruling, the Court need not consider defendant's additional argument relating to TSI's previous claims of contributory infringement and infringement by inducement.

9

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment on defendants' declaratory judgment counterclaims (Doc. # 187) is **denied**.

IT IS SO ORDERED.

Dated this 13th day of April, 2010, in Kansas City, Kansas.

                                               s/ John W. Lungstrum
                                               John W. Lungstrum
                                               United States District Judge