# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THERMAL SOLUTIONS, INC.,     )
                                       )

                Plaintiff,     )       CIVIL ACTION
                                       )

v.                             )

                                     )     **Case No. 2:08-cv-02220-JWL-DJW**

IMURA INTERNATIONAL U.S.A., INC., et al., )

                                     )

               Defendants.     )

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Compel or Exclude Expert Testimony of Brian Clothier (doc. 151). The Motion is fully briefed and is therefore ripe for consideration. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.    BACKGROUND & CONFERRING REQUIREMENTS

The facts of this case are well known to the parties and the Court and will not be repeated here. A detailed description of the background in this case is set forth in the Court's December 4, 2009 Memorandum and Order (doc. 141) and is incorporated herein by reference.

Brian Clothier is the president of Plaintiff.[1] On or about November 16, 2009, pursuant to Fed. R. Civ. P. 26(a)(2), Plaintiff designated Mr. Clothier, as an expert who may be called to testify at trial.[2] In addition, on or about December 28, 2009, Plaintiff supplemented its answers to Defendants Vita Craft's and Imura International U.S.A., Inc.'s First Interrogatories (Served in the Johnson County Litigation), specifically Interrogatory No. 34, which asked Plaintiff to "[i]dentify

---

[1] Aff. of Brian L. Clothier (attached as Ex. C to TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167)) ¶ 1.

[2] Pl.'s Rule 26 Designation of Experts (attached as Ex. A to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)).

each person You intend to call as a witness to offer opinion testimony in this case and for each such person provide the information to be disclosed for retained experts pursuant to K.S.A. 60-226(b)(6)(B)."[3] In its supplemental answer to Interrogatory No. 34, Plaintiff stated that it "expects to offer the expert testimony of Mr. Brian Clothier as it relates to two subjects: a) the invalidity of claims 1, 2, 3, 8, 9, 10, 11, 12, 16, and 28 of U.S. Patent No. 7,157,675 (the '657 patent); and b) defendants' infringement of claims 19, 22, 26, and 36 of U.S. Patent No. 6,320,169 (the '169 patent)."[4] Plaintiff then went on to provide more detail regarding Mr. Clothier's testimony on these two subjects and further stated that Mr. Clothier may offer opinions that address various assertions made by Defendants' expert.[5]

After Plaintiff disclosed Brian Clothier as someone who may be called to give expert testimony at trial, Defendants' counsel wrote to Plaintiff's counsel on December 3, 2009 and demanded that Plaintiff provide "copies of all documents Mr. Clothier considered before developing the opinions [Plaintiff] has indicated he intends to offer in this case[,] . . . includ[ing] all documents Mr. Clothier has reviewed, and all documents that Mr. Clothier prepared, received, or reviewed that would be relevant to the subjects on which he is expected to offer expert testimony."[6] Defendants' counsel argued that "Defendants' request for these specific documents is covered by their First

---

[3] TSI's Third Supplemental Answers to Vita Craft's and Imura International U.S.A., Inc.'s First Interrogs. (Served in the Johnson County Litigation) (attached as Ex. B to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)) at 1.

[4] *Id.* at 1-2.

[5] *Id.* at 2-3.

[6] Dec. 3, 2009 Letter from J. Bradley Leitch to Todd N. Tedesco (attached as Ex. D to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)) at 1.

Request for Production of Documents, Request 52 in the Johnson County litigation."[7] Defendants'

counsel further argued that "[b]ecause [Plaintiff] designated Mr. Clothier as an expert witness, it

waived all claims of attorney-client privilege and work product with respect to all documents that

[Mr. Clothier] considered or that are relevant to the opinions he is expected to give."[8] Defendants'

counsel then provided a non-inclusive list of the categories of documents it expected Plaintiff to

produce.

In response, Plaintiff's counsel argued that Plaintiff had not waived any privilege by

designating Mr. Clothier as an expert.[9] In addition, Plaintiff's counsel stated he would need to

confirm with his client, but he believed Plaintiff had already produced all documents responsive to

Defendants' Document Request No. 52.[10]

The parties were unable to resolve this dispute and, thus, Defendants filed the instant Motion,

asking this Court to (1) require Plaintiff to produce an expert report from Brian Clothier complying

with the requirements of Fed. R. Civ. P. 26(a)(2)(B), including producing documents considered by

Mr. Clothier in forming his opinions without objection on the grounds of privilege, (2) require

Plaintiff to produce all documents responsive to Document Request No. 52 without objection on the

grounds of privilege, and (3) if Plaintiff fails to comply with the Court's order, strike Plaintiff's

---

[7] *Id.*

[8] *Id.*

[9] Dec. 11, 2009 Email from Todd Tedesco to J. Bradley Leitch (attached as Ex. F to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)).

[10] Dec. 14, 2009 Email from Todd Tedesco to J. Bradley Leitch (attached as Ex. E to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)).

designation of Mr. Clothier as an expert witness and preclude Mr. Clothier from offering any opinions that Plaintiff has designated him to give or any other testimony that would constitute expert opinion testimony under Fed. R. Evid. 702, 703, or 705.[11] Defendants also ask that the Court award Defendants the attorneys' fees and costs they incurred in preparing and presenting the Motion to the Court.[12]

On March 1, 2010, the Court held a hearing to discuss Defendants' Motion, along with several other discovery motions pending before the Court. The Court held a follow-up hearing on March 15, 2010.

Having reviewed the numerous relevant pleadings and the statements of counsel during the hearings on the Motion, it is clear to the Court that the parties have made reasonable efforts to confer concerning the matter in dispute.[13] The Court will therefore consider the Motion on the merits.

## II.    STANDARDS

Under Fed. R. Civ. P. 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."[14] Under Fed. R. Civ. P. 26(a)(2)(B), "this disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case or

---

[11] Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152) at 22-23.

[12] *Id.* at 23.

[13] D. Kan. Rule 37.2; Fed. R. Civ. P. 37(a)(1).

[14] Fed. R. Civ. P. 26(a)(2)(A).

4

one whose duties as the party's employee regularly involve giving expert testimony."[15] "The report must contain[] a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them[.]"[16] However, a report is not required from every witness who may present evidence under Fed. R. Evid. 702, 703, or 705. Indeed, the Tenth Circuit analyzed Fed. R. Civ. P. 26(a)(2)(B) in *Watson v. United States*[17] and declared, "While [Fed. R. Civ. P. 26(a)(2)(B)] focuses on those who must file an expert report, by exclusion it contemplates that some persons are not required to file reports and that these include individuals who are employed by a party and do not regularly give expert testimony."[18]

Defendants argue that Mr. Clothier was specially employed to provided expert testimony in this case and, therefore, Plaintiff must provide an expert report from him.[19] In determining whether an expert witness is specially employed to provide expert testimony, the Court looks at the scope of the proposed testimony.[20] Where the testimony is based on facts learned by the witness designated as an expert during the course of his or her work or other involvement in the circumstances leading up to the litigation, the witness is not considered a retained or specially

---

[15] Fed. R. Civ. P. 26(a)(2)(B).

[16] *Id.*

[17] 485 F.3d 1100 (10th Cir. 2007).

[18] *Id.* at 1107.

[19] Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152) at 4-13.

[20] *Full Faith Church of Love West, Inc. v. Hoover Treated Wood Products, Inc.*, 2003 WL 169015, at *1 (D. Kan. Jan. 23, 2003) (citing *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)).

employed expert and no written report is required under Fed. R. Civ. P. 26(a)(2)(B).[21]  Stated another way, where the expert witness' testimony consists of information that was obtained by the witness by virtue of his or her role as an actor or viewer of the transactions or occurrences giving rise to the litigation, the witness is not considered a retained or specially employed expert and, thus, no written report is required under Fed. R. Civ. P. 26(a)(2)(B).[22]

For example, a treating physician may testify as to the care and treatment of his or her patient without being considered a retained or specially employed expert even though the treating physician may offer opinion testimony under Fed. R. Evid. 702, 703 or 705.[23]  However, a treating physician becomes a retained or specially employed expert if the physician's testimony extends beyond the information learned by the physician by virtue of his or her role in the transactions or occurrences giving rise to the litigation, that is, the physician's treatment of the patient.[24]  Upon becoming a retained or specially employed expert, the treating physician must provide a report under Fed. R. Civ. P. 26(a)(2)(B).

## III.    ANALYSIS

Defendants argue that Mr. Clothier is a specially retained expert under Fed. R. Civ. P. 26(a)(2)(B) because the expert testimony Plaintiff intends Mr. Clothier to give was developed for

---

[21] *See id.*

[22] *See Jones v. Greyhound Lines, Inc.,* No. 08-1185-MLB, 2009 WL 2195760, at *2-4  (D. Kan. July 22, 2009)*; McReynolds v. Bigler*, No. 88-1343-C, 1990 WL 129454, at *2 (D. Kan. Aug.6, 1990).

[23] *Wreath*, 161 F.R.D. at 450.

[24] *Jones,* 2009 WL 2195760, at *2-4*; McReynolds*, 1990 WL 129454, at *2; *Full Faith Church*, 2003 WL 169015, at *1 (citing *Wreath*, 161 F.R.D. at 450).

this litigation. As such, Defendants ask the Court to require Plaintiff to produce a report from Mr. Clothier under Fed. R. Civ. P. 26(a)(2)(B), which would include a complete statement of all opinions Mr. Clothier will express and the basis for those opinions, as well as the data or other information considered by Mr. Clothier in forming his opinions. Defendants also ask the Court to compel Plaintiff to supplement its response to Document Request No. 52, which seeks all documents provided to, reviewed by, or relied upon any expert witness that Plaintiff intends to call as a witness in this lawsuit. The Court will address each of Defendants' requests in turn.

### A.     Expert Report under Fed. R. Civ. P. 26(a)(2)(B)

To determine whether Plaintiff must provide an expert report by Mr. Clothier, the Court must examine the nature and scope of Mr. Clothier's proposed trial testimony. Because Plaintiff has not produced an expert report by Mr. Clothier, Plaintiff has the burden to show that Mr. Clothier is not, as Defendants' claim, a retained or specially employed expert.[25]

Plaintiff's supplemental answer to Defendants' Interrogatory No. 34 sets out the subjects that Plaintiff anticipates Mr. Clothier will testify to during the trial of this matter and a description of that testimony. Plaintiff expects that Mr. Clothier will testify as to two subjects: (1) the invalidity of certain claims of the '675 patent and (2) Defendants' infringement of certain claims of the '169

---

[25] *Cinergy Commc'ns Co. v. SBC Commc'ns, Inc.*, Civ. A. No. 05-2401-KHV, 2006 WL 3192544, at *3 (D. Kan. Nov. 2, 2006).

patent.[26]  Plaintiff also states that Mr. Clothier may offer opinions that address assertions made by Defendants' expert.[27]

As to the first subject, Plaintiff explains that it expects Mr. Clothier to testify that, in his opinion, claims 1, 2, 3, 8, 9, 10, 11, and 12 of the '675 patent are anticipated by the '919 patent, and that the alleged inventions described in claims 1,2, 3, 8, 9, 10, 11, 12, 16, and 28 of the '675 patent would have been obvious to a person of ordinary skill in the art at the time Defendant Mamoru Imura claims to have invented them.[28]  In addition to describing Mr. Clothier's testimony concerning the first subject, Plaintiff's supplemental answer to Interrogatory No. 34 refers Defendants to the claim chart previously produced by Plaintiff on or about April 28, 2009.[29]  This claim chart, according to Plaintiff, (a) sets forth Mr Clothier's application of the '919 patent to the '675 patent's anticipated claims, (b) describes the prior art references on which Mr. Clothier relies in reaching his opinion that the alleged inventions described in certain claims of the '675 patent would have been obvious to a person of ordinary skill in the art at the time Defendant Mamoru Imura claims to have invented them, and (c) sets forth Mr. Clothier's application of those prior art references  to the '675 patent's obvious claims.[30]

---

[26] TSI's Third Supplemental Answers to Vita Craft's and Imura International U.S.A., Inc.'s First Interrogs. (Served in the Johnson County Litigation) (attached as Ex. B to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)) at 1-2.

[27] *Id.* at 3.

[28] *Id.* at 2.

[29] *Id.*

[30] *Id.*

As to the second subject, Plaintiff explains that it expects Mr. Clothier to testify (a) about his familiarity with the RFID-controlled, household cooking products he was helping Defendants develop during the term of the applicable licensing agreements, including defendants' "RFIQ Automatic Cooking System"; (b) about the components and features of those products; (c) about the capabilities and operation of those products; and (d) that the product description previously set forth on Defendant Vita Craft's website, for the issues pertinent hereto, accurately described many of the components, features, capabilities, and operation of those products.[31]  Plaintiff also expects Mr. Clothier to testify that, in his opinion, (i) Defendants' RFID-controlled, household cooking products were specifically designed to and did incorporate the inventions claimed in the '169 patent, including claims 19, 22, and 36, and (ii) when Defendants' RFIQ Automatic Cooking System is used as intended, the user would employ every step of the heating method contained in claim 26 of the '169 patent.[32]  In addition to describing Mr. Clothier's testimony concerning the second subject, Plaintiff's supplemental answer to Interrogatory No. 34 refers Defendants to the claim chart previously produced by Plaintiff on or about October 13, 2009, which according to Plaintiff, sets forth Mr. Clothier's comparison of the features of Defendants' RFIQ Automatic Cooking System to the limitations contained in the '169 patent's combination/apparatus claims.[33]

---

[31] *Id.*

[32] TSI's Third Supplemental Answers to Vita Craft's and Imura International U.S.A., Inc.'s First Interrogs. (Served in the Johnson County Litigation) (attached as Ex. B to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)) at 2-3.

[33] *Id.* at 3.

Finally, as to the opinions Mr. Clothier will offer concerning the assertions made by Defendants' expert, Plaintiff states: "The substance of Mr. Clothier's opinions will be regarding the state of the art during the relevant time frame for the '585, '169, and '919 patents."[34]

According to Plaintiff, Mr. Clothier is "the" fact witness for Plaintiff.[35]  However, Plaintiff disclosed Mr. Clothier as an expert witness under Fed. R. Civ. P. 26(a)(2)(A) because Mr. Clothier may offer expert opinions during his testimony at trial due to his "substantial scientific, technical, and other specialized knowledge relating to the technology and products at the core of this dispute."[36]  Plaintiff argues that Mr. Clothier does not constitute an expert who must provide a report under Fed. R. Civ. P. 26(a)(2)(B) because "his duties with [Plaintiff] – the company that he created – do not now and never have involved giving expert testimony, and his opinions in this case were formed contemporaneously with the underlying events and not because of the litigation."[37]

Plaintiff points to the Affidavit of Brian Clothier in support of its arguments that Mr. Clothier is not required to provide an expert report.[38]  The following information comes from Mr. Clothier's affidavit.  Mr. Clothier is the current president of Plaintiff, which he incorporated with a business

---

[34] *Id.* at 3.

[35] TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167) at 2.

[36] *Id.*

[37] *Id.*

[38] Aff. of Brian Clothier (attached as Ex. C to TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167)).

partner in 1996.[39]   Mr. Clothier's work at Plaintiff "involves the creative development of new products, obtaining appropriate patent protection for [his] company's inventions, the development of business relationships with third parties, and overseeing the negotiations and performance of [Plaintiff's] license agreements with third parties."[40]

According to Mr. Clothier, he has a personal understanding of the subject matter disclosed and claimed in the '585, '169, and '919 patents because he "invented practically all of the subject matter claimed in those patents."[41]   Mr. Clothier's business partner "co-invented some of the non-RFID content disclosed in the '585 patent."[42]   In addition, Mr. Clothier "personally participated in the prosecution of the '585, '169, and '919 patents and helped draft the specifications for their applications."[43]   He "conceived the ideas for these patents before [he] met anyone associated with" Defendants.[44]   In fact, "both the '585 and '169 patents had been issued before [Plaintiff] was ever contacted by [D]efendants about the possibility of licensing [Plaintiff's] technology for use in [Defendants'] products."[45]   Further, Mr. Clothier has a personal understanding of the contractual relationship between Plaintiff and Defendant Imura International U.S.A., Inc. because he was

_____

[39] *Id.* at ¶ 1.

[40] *Id.* at ¶ 3.

[41] *Id.* at ¶ 5.

[42] *Id.*

[43] *Id.* at ¶ 6.

[44] Aff. of Brian Clothier (attached as Ex. C to TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167) at ¶ 6.

[45] *Id.*

actively involved in the negotiation of those agreements, which he signed on behalf of Plaintiff.[46]

Mr. Clothier was also "actively and intimately involved in [D]efendants' development of products

pursuant to the license [Plaintiff] granted to [Defendant Imura International U.S.A., Inc.]"[47] Indeed,

Mr. Clothier designed Defendants' RFID-controlled automatic cooking system, which was done

with the intent that it would incorporate the patents and technology that Plaintiff licensed to

Defendant Imura International U.S.A., Inc. under the license agreements.[48]

Finally, Mr. Clothier avers that the opinions he may offer at trial were all formed before this

litigation began. His opinions about Defendants' RFID-controlled automatic cooking system were

formed through his involvement in the negotiation of the license agreements and the development

of Defendants' products and cooking systems.[49] Mr. Clothier's opinion that Defendant Mamoru

Imura was seeking to patent portions of the inventions that Mr. Clothier had disclosed to Defendant

Mamoru Imura, which were covered by Plaintiff's existing patent rights and which were licensed

to Defendant Imura International U.S.A., Inc., were formed when Mr. Clothier saw the published

patent application for the '675 patent.[50] His opinions about the '675 patent were formed through his

understanding of what he taught and disclosed to Defendant Mamoru Imura about Plaintiff's patents

and "RFID Technology" and his pre-existing knowledge of which he specifically disclosed in the

---

[46] *Id.* at ¶ 7.

[47] *Id.* at ¶ 8.

[48] *Id.* at ¶¶ 8-9.

[49] *Id.* at ¶ 10.

[50] Aff. of Brian Clothier (attached as Ex. C to TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167)) at ¶ 11.

patent application for the '919 patent.[51] Mr. Clothier's opinions, which may relate to the opinions that Defendants' expert may offer, address his understanding of the state of the art at the time he filed the '585, '169, and '919 patent applications.[52] Mr. Clothier's opinions concerning "the state of the art are based on the personal knowledge [he] obtained in developing the inventions claimed in the '585, '169, and '919 patents and seeking patent protection for those inventions."[53] None of Mr. Clothier's opinions concerning the state of the art were formed based on a review or investigation after this litigation began or after he was provided a copy of Defendants' expert's report.[54]

Having considered Mr. Clothier's affidavit[55] and Plaintiff's description of Mr. Clothier's proposed testimony in its supplemental answer to Interrogatory No. 34, it appears to the Court that Plaintiff has satisfied its burden to demonstrate that an expert report is not required under Fed. R. Civ. P. 26(a)(2)(B). Mr. Clothier's testimony here can be likened to that of a treating physician. Although his testimony may be based on scientific or other specialized knowledge, the testimony will be based entirely upon facts known to Mr. Clothier before this litigation ever began. The Court finds that Mr. Clothier has been involved in the transactions and occurrences leading up to this

---

[51] *Id.* at ¶ 12.

[52] *Id.* at ¶ 13.

[53] *Id.* at ¶ 14.

[54] *Id.*

[55] The Court finds Mr. Clothier's affidavit helpful in determining the scope of Mr. Clothier's testimony. *See Cinergy Commc'ns*, 2006 WL 3192544, at *3 ("If Defendants intend to use Ms. Burgess, Mr. Smith, and Mr. Read to present evidence under Fed. R. Evid. 702, 703, or 705, then Defendants shall provide for each either: (1) the report required by Fed. R. Civ. P. 26(a)(2)(B), or (2) an affidavit certifying that the witness' duties do not include regularly giving expert testimony and that the witness is not specially retained or employed to provide expert testimony.").

litigation from the very beginning. Mr. Clothier was involved in the development of the technology at issue in this case, he personally participated in the prosecution of the relevant patents and helped draft the specifications for their applications, he was involved in the negotiations of the license agreements with Defendants, and he worked with Defendants to develop products pursuant to those license agreements. In addition, the Court notes that Defendants admit that "Mr. Clothier was involved in many of the events that give rise to the claims at issue in this case . . .."[56]

The Court finds, based on the Affidavit of Brian Clothier and Plaintiff's explanation of his expected testimony, that Mr. Clothier's testimony at trial will consist solely of information and opinions that were obtained and formed by Mr. Clothier by virtue of his involvement in the transactions or occurrences giving rise to the litigation. The Court therefore holds that no expert report is required under Fed. R. Civ. P. 26(a)(2)(B).

Defendants argue that the Court should conclude differently and find that an expert report is required. Defendants claim that Mr. Clothier's testimony will extend beyond facts learned during his involvement in the transactions and occurrences leading up to this case and that he could not have held his opinions before this litigation began because "[t]he claims charts in which Mr. Clothier's opinions are developed were prepared for and in this litigation in April and October 2009, not during the underlying project."[57] Defendants further claim that because the chart in which Mr. Clothier "develops his opinion that the '675 patent is invalid[] relies on a document produced by Defendants in this litigation[,] . . . Mr. Clothier could not have formed that opinion before this

---

[56] Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152) at 1.

[57] Defs.' Reply Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 172) at 3.

litigation was filed or that document was produced."[58]

The Court is not persuaded by Defendants' arguments. First, although Defendants attempt to characterize these claims charts as charts in which Mr. Clothier *develops* his opinions, it appears to the Court that these charts *reflect* Mr. Clothier's opinions, which Mr. Clothier formed based on information learned before this litigation began as a result of his involvement in the transactions and occurrences leading up to this litigation. Further, the fact that one of the charts refers to a document produced by Defendants during this litigation does not mean that Mr. Clothier developed his opinions for the purposes of this litigation based on facts he learned during this litigation. The Court has already reviewed Mr. Clothier's affidavit and finds that Mr. Clothier's opinions to which he will testify were formed based on facts learned by virtue of his involvement in this case before this litigation began and that his opinions were formed before this litigation began.

Defendants further argue that Mr. Clothier's testimony will extend beyond the facts he learned during his involvement in the transactions and occurrences leading up to this litigation when he attempts to rebut Defendants' expert's opinions. Defendants argue that because their expert's opinions were not disclosed until November 16, 2009, Mr. Clothier's rebuttal opinions could not be based on facts known to him before the litigation.[59] The Court does not agree. Mr. Clothier's affidavit makes it clear that his rebuttal testimony will consist of his opinion concerning the state of the art during the relevant time frame for the patents involved in this case, and that these opinions are based on his personal knowledge obtained during the development of the inventions claimed in the patents.

---

[58] *Id.*

[59] *Id.* at 3-4.

Defendants also argue that because Mr. Clothier may give rebuttal testimony, he must be considered a specially employed expert.[60] The Court does not agree. In determining whether an expert is specially employed, the Court looks at the scope of the proposed testimony.[61] Here, Mr. Clothier's testimony will consist of his opinions formed before this litigation began, including his opinions regarding the state of the art during the relevant time frame for the patents involved in this case which are based on his personal knowledge obtained in developing the inventions claimed in the '585, '169, and '919 patents and seeking patent protection for those inventions. The fact that Mr. Clothier's opinions regarding the state of the art may rebut Defendant's expert's opinions does not mean that those opinions were specially developed just for this litigation.

Finally, Defendants argue that the policy behind Fed. R. Civ. P. 26(a)(2) supports an order requiring Mr. Clothier to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B).[62] Defendants claim that without a report from Mr. Clothier, they will be left without any basis to prepare to challenge Mr. Clothier's proposed testimony.[63] According to Defendants, Mr. Clothier should be required to provide a report "to prevent the fundamental unfairness of a party designating an expert witness to testify at trial but not disclosing the bases for the expert's opinions and [the] materials considered."[64]

---

[60] *Id.* at 4.

[61] *Full Faith Church*, 2003 WL 169015, at *1 (citations omitted).

[62] Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152) at 12-13.

[63] *Id.*

[64] Defs.' Reply Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 172) at 5.

The Tenth Circuit in *Watson v. United States*[65] did an excellent job of setting out the policy behind Fed. R. Civ. P. 26(a)(2)(B), as well as the options available to parties who are left cross examining an expert not required to provide a report. In *Watson*, Ms. Watson, on behalf of an incapacitated former federal prisoner, sued under the Federal Tort Claims Act, alleging that the government responded negligently to the former prisoner's medical condition.[66] After the district court found the government not liable, Ms. Watson presented two legal questions to the Tenth Circuit, one being whether all experts must always render written reports as a precondition to being permitted to take the stand.[67] The Tenth Circuit concluded that Fed. R. Civ. P. 26(a)(2)(B) contemplates that some persons are not required to file reports, including individuals who are employed by a party and do not regularly give expert testimony.[68] The Tenth Circuit explained that it was undisputed that the doctor who testified in the trial met this description and thus was not required to provide an expert report.[69] The Tenth Circuit then addressed Ms. Watson's policy argument:

> Ms. Watson replies to this analysis less with a textual argument than a policy one; to her, it is grossly unfair to allow a party to call an expert to testify without first providing advance notice of his or her opinions. But there exist policy arguments on both sides of this debate, and the rulemakers, with the approval of Congress, have sought to balance those interests in Rule 26. On one hand, the rulemakers were clearly concerned about the fulsome and efficient disclosure of expert opinions when they adopted the report requirement for most cases and experts. On the other hand,

---

[65] 485 F.3d 1100 (10th Cir. 2007).

[66] *Id.* at 1102.

[67] *Id.* at 1102-03.

[68] *Id.* at 1107.

[69] *Id.*

it is apparent that the rulemakers did not think reports should be required in all cases
. . ..

Neither are we able to disregard that the Federal Rules of Civil Procedure approved by Congress do supply other mechanisms, besides formal reports, for extracting the views of an expert witness like Dr. Goforth; sandbagging is not necessarily inevitable. Generally all witnesses, regardless of their status, must be identified, with their contact information, in a party's Rule 26(a)(1)(A) disclosures. Moreover, parties must also disclose, *inter alia*, a copy or location of "all documents, electronically stored information, and tangible things that are in possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Fed. R. Civ. P. 26(a)(1)(B). A party's failure to comply with these provisions, including with respect to its employees who (like Dr. Goforth) serve as expert witnesses, can result in the exclusion of witnesses and other sanctions. Fed. R. Civ. P. 37(c)(1). Likewise, all witnesses are subject to deposition, individual document demands, and other discovery the court deems necessary and appropriate.[70]

The Court concludes that the policy discussion found in *Watson* is certainly applicable here. Although Mr. Clothier is not required to provide an expert report, Defendants are not necessarily left in the dark as to Mr. Clothier's opinions and the bases for those opinions. The Federal Rules of Civil Procedure provide Defendants with other mechanisms for obtaining this information. In fact, one such mechanism, document requests, is the subject of the second portion of this Memorandum and Order. In addition, it does not appear that Defendants have deposed Mr. Clothier yet.[71] Deposing Mr. Clothier would give Defendants an opportunity to learn about his opinions and the basis for his opinions.

The Court will therefore deny Defendants' request that Plaintiff provide an expert report from Mr. Clothier under Fed. R. Civ. P. 26(a)(2)(B). However, if at any time it becomes clear that

---

[70] *Id.* at 1107-08 (citations omitted).

[71] *See* Order (doc. 166) granting, *inter alia*, the request to conduct the deposition of Brian Clothier outside the discovery deadline.

the scope of Mr. Clothier's testimony will be based on facts other than those learned by Mr. Clothier by virtue of his involvement in the transactions and occurrences leading up to this case, then Defendants may certainly file the appropriate motion with the Court seeking to limit Mr. Clothier's testimony.

## B. Documents Responsive to Document Request No. 52

Document Request No. 52 seeks "[a]ll documents provided to, or reviewed or relied upon [by any] expert witness that you intend to call as a witness in this lawsuit."[72] At the time Plaintiff responded to Document Request No. 52, it had not yet identified an expert witness and thus responded, "This Request is premature. TSI has not yet determined which expert witness it intends to call as a witness."[73] Plaintiff later designated Mr. Clothier as an expert witness who may be called to testify at trial.

Defendants argue that Plaintiff is required to supplement its response to Document Request No. 52 and provide all responsive documents, including any documents that are protected by the attorney-client privilege or the attorney work product doctrine. Defendants argue that Plaintiff has waived these privileges because: (a) Plaintiff has identified Mr. Clothier as an expert witness under Fed. R. Civ. P. 26(a)(2)(A) and any privileges are waived when documents are provided to such a witness; (b) Plaintiff failed to assert these privileges when initially responding to Document Request

---

[72] [Pl.'s] Resps. to [Defendants'] First Req. for Prod. of Docs. (attached as Ex. C to Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152)).

[73] *Id.*

No. 52; and (c) Plaintiff never asserted any privilege objections after it designated Mr. Clothier as an expert.[74]

### 1.    Waiver Under Fed. R. Civ. P. 26(a)(2)(B)

Defendants rely on *Western Resources, Inc. v. Union Pacific Railroad Co.*[75] to support their argument that Plaintiff waived the privilege for any documents provided to Mr. Clothier when it designated Mr. Clothier as an expert under Fed. R. Civ. P. 26(a)(2)(B).[76]  In *Western Resources*, the defendants moved to compel the plaintiff to provide all privileged documents provided to and considered by the plaintiff's expert witness.[77]  The plaintiff's expert witness, Mr. Crowley, had assisted the plaintiff in several capacities, including acting as an independent consultant who had advised the plaintiff from time to time since the late 1970's, providing technical advice to the plaintiff's attorney in 1993 so the plaintiff's attorney could then provide legal advice to the plaintiff,

---

[74] In their reply brief, Defendants refer to Plaintiff's response to their Third Request for Documents, Document Request No. 1, which seeks "All documents related to or regarding the subjects of Mr. Clothier's Opinions that Mr. Clothier considered, read or reviewed before or in connection with formulating those opinions."  However, Defendants did not discuss Document Request No. 1 in their Motion and the Court will not address issues raised for the first time in a reply brief.  *See ICE Corp. v. Hamilton Sundstrand Inc.*, No. 05-4135-JAR, 2007 WL 3026641, at *3 (D. Kan. Oct. 12, 2007) (citing *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 788 (10th Cir. 2007)).  The Court will therefore not address or consider any issues concerning Document Request No. 1 and Plaintiff's responses thereto.  That being said, it does not appear to the Court that Defendants are seeking to compel responses to Document Request No. 1 at this time, as the Court recently granted Defendants' unopposed request for an extension of time to file any motion to compel responses to, *inter alia*, Document Request No. 1 (see doc. 181).

[75] No. 00-2043-CM, 2002 WL 181494, at *8 (D. Kan. Jan. 31, 2002).

[76] Defs.' Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 152) at 16-18.

[77] *W. Res., Inc.*, 2002 WL 181494, at *1.

and consulting with the plaintiff in early 1998 with respect to potential claims against the defendants in the instant litigation.[78]

In late 1999, Mr. Crowley's role as a consulting expert evolved into that of an expert who would be expected to testify at trial.[79]  Thus, the plaintiff designated Mr. Crowley as an expert witness expected to testify at trial under Fed. R. Civ. P. 26(a)(2)(A) and provided a report from Mr. Crowley under Fed. R. Civ. P. 26(a)(2)(B).[80]  The defendants demanded production of all documents provided to and considered by Mr. Crowley and the plaintiff refused to provide some of those documents on the grounds that they were privileged.[81]

The court in *Western Resources* reiterated the holding in *Johnson v. Gmeinder* that any type of work product or other privileged information loses its privileged status when disclosed to, and considered by, a testifying expert.[82]  However, the court also made it clear that the issue of waiver starts with an analysis of the obligation to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B):

> The appropriate starting place for a discussion on the issue of waiver and expert disclosures is Rule 26(a)(2) of the Federal Rules of Civil Procedure.  As amended in 1993, Rule 26(a)(2)(B) requires that reports be prepared for each testifying expert and that such reports contain "the data or other information considered by the [expert] witness in forming the opinions.[83]

The court then looked to the advisory committee notes to Fed. R. Civ. P. 26(a)(2), which provide:

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at *3.

[82] *Id.* at *8 (citing *Johnson v. Gmeinder*, 191 F.R.D. 638 (D. Kan. 2000)).

[83] *W. Res, Inc.*, 2002 WL 181494, at *8.

> Given this obligation of disclosure, litigants should no longer be able to argue that
> materials furnished to their expert to be used in forming their opinions-whether or
> not ultimately relied upon by the expert-are privileged or otherwise protected from
> disclosure when such persons are testifying or being deposed.[84]

The court in *Western Resources* then proceeded to analyze whether the plaintiff's expert had

considered certain documents and thus whether the privilege had been waived.

The Court agrees with the framework set out in *Western Resources* – the issue of waiver

starts with an analysis of the obligation to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B).

The Court concludes that where there is no reporting requirement under Fed. R. Civ. P. 26(a)(2)(B)

(which includes disclosing all data or other information considered by the expert), there can be no

waiver under Fed. R. Civ. P. 26(a)(2)(B). The advisory committee notes to Fed. R. Civ. P. 26(a)(2)

support this conclusion, as the advisory committee notes make it clear that the waiver issue is tied

to the reporting requirement under Fed. R. Civ. P. 26(a)(2)(B):

> *Paragraph (2)(B)* requires that persons retained or specially employed to provide
> expert testimony . . . must prepare a detailed and complete *written report . . .. The
> report* is to disclose the data and other information considered by the expert and any
> exhibits or charts that summarize or support the expert's opinions. Given *this*
> obligation of disclosure, litigants should no longer be able to argue that materials
> furnished to their experts to be used in forming their opinions – whether or not
> ultimately relied upon by the expert - are privileged or otherwise protected from
> disclosure when such persons are testifying or being deposed.[85]

Having concluded that Mr. Clothier is not required to produce an expert report under Fed.

R. Civ. P. 26(a)(2)(B) because he is not a retained or specially employed expert, the Court further

---

[84] *Id.* at *8 n.10 (quoting Fed. R. Civ. P. 26(a)(2) advisory committee notes (1993 amendments)).

[85] Fed. R. Civ. P. 26(a)(2) advisory committee notes (1993 amendments) (emphasis added).

concludes that the issue of waiver under Fed. R. Civ. P. 26(a)(2)(B) is not applicable here.[86]  The

Court therefore finds that Plaintiff did not waive any privilege under Fed. R. Civ. P. 26(a)(2)(B) by

providing privileged documents to Mr. Clothier.

### 2.    Waiver Based on Plaintiff's Initial Response to Doc. Req. No. 52

Defendants also argue that Plaintiff waived any privilege when it failed to object to

Document Request No. 52 in its initial response to the request.[87]  The Court is not persuaded by this

argument.  Fed. R. Civ. P. 34 requires a party responding to a document request to state its

objections to the request with specificity.  Nothing in Fed. R. Civ. P. 34, however, requires the party

to assert every objection that might possibly apply to the request at some point in the future if the

party must later supplement its response.  In fact, Fed. R. Civ. P. 26(g) discourages a party from

asserting a plethora of objections for the purpose of preserving those objections in case they become

applicable in the future.  Fed. R. Civ. P. 26(g) requires the attorney signing the responses, and in so

signing, to certify that the responses and objections are consistent with the Federal Rules of Civil

Procedure and not interposed for any improper purpose.  The Court concludes that a party should

not make objections that are not applicable simply because they may become applicable in the

future.  To adopt such a rule would require parties to assert every objection available, which would

---

[86] The Court is not holding that privilege documents given to an expert witness who need not provide an expert report under Fed. R. Civ. P. 26(a)(2)(B) can never lose their privileged status. There are certainly other arguments to be made for the waiver of privilege, such as when documents protected by the attorney-client privilege are provided to someone other than the client or counsel and thereby lose their confidential status.  However, Defendants make no argument that disclosure of the documents to Mr. Clothier, the president of Plaintiff, otherwise resulted in waiver of any claimed privilege, and the Court therefore need not analyze that issue.

[87] Defs.' Reply Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 172) at 10.

certainly frustrate the goal of securing the "just, speedy, and inexpensive determination of every action and proceeding."[88]

The Court therefore finds that Plaintiff's failure to raise any privilege objections to Document Request No. 52 in its initial response, at a time when Plaintiff had no reason to make such objections, does not result in a waiver of those privileges.

### 3. Waiver of Privilege Based on Plaintiff's Failure to Assert Privilege Objections After Designating Mr. Clothier as an Expert Witness

Defendants argue that even after Plaintiff designated Mr. Clothier as an expert witness, Plaintiff never asserted privilege objections to Document Request No. 52, which seeks all documents provided to, reviewed by, or relied upon by any expert witness that Plaintiff intends to call as a witness in this lawsuit.[89]  Defendants further argue that Plaintiff, despite its claims to the contrary, has not yet produced all responsive documents to Document Request No. 52 and that Plaintiff has not produced a privilege log identifying the documents it is withholding on the basis of privilege.[90]

Plaintiff, on the other hand, argues that it has already provided Defendants "all discoverable documents that conceivably would have been provided to, reviewed, or relied upon by Clothier in forming the opinions he may offer."[91]  According to Plaintiff, "[t]he only 'related' documents [Plaintiff] has not produced are non-responsive, privileged communications that Clothier provided

---

[88] Fed. R. Civ. P. 1.

[89] Defs.' Reply Suggestions in Supp. of Their Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 172) at 10.

[90] *Id.* at 10-11.

[91] TSI's Mem. in Opp'n to Defs.' Mot. to Compel or Exclude Expert Test. of Brian Clothier (doc. 167) at 3.

to [Plaintiff's] counsel to educate them on the claims of [Plaintiff's] '585 and '169 patents and the claims of the '675 patent, or communications from counsel to Clothier concerning the litigation."[92] Plaintiff argues that these privileged communications are non-responsive to Document Request No. 52 because the request "calls for all documents given to or relied on by an expert in formulating his or her opinions" and these privileged communications "are not documents [Mr. Clothier] relied on to form any opinions on which he might offer testimony."[93]

The Court is not persuaded by Plaintiff's argument that any privileged documents would not be responsive to Document Request No. 52. In making its argument that certain documents are non-responsive, Plaintiff neglects to take into account the fact that Document Request No. 52 seeks more than those documents "given to or relied on" by Mr. Clothier to form any opinions on which he might offer testimony. Rather, Document Request No. 52 seeks all documents "provided to, or *reviewed* or relied upon" by Mr. Clothier.

The Court further concludes that there is no evidence that Plaintiff ever timely served Defendants with a supplemental response to Document Request No. 52 or that Plaintiff ever made any objections to Document Request No. 52 after Plaintiff designated Mr. Clothier as an expert witness. Plaintiff cannot raise objections to Document Request No. 52 for the first time in response to Defendants' Motion seeking to compel a response to the request. The Court has made it clear that objections raised in a party's pleading, but not made in response to a discovery request are

---

[92] *Id.* at 3-4.

[93] *Id.* at 4.

considered waived.[94]  Even if Plaintiff had asserted these objections, the Court concludes that Plaintiff failed to meet its burden to demonstrate that any privilege is applicable to the documents. There is no evidence that Plaintiff has provided a privilege log for these documents, and Plaintiff has not provided the Court with sufficient information to conclude that these documents are covered by any privilege.  The Court therefore finds that Plaintiff has waived any privilege objection for those documents responsive to Document Request No. 52.

Finally, in its Memorandum and Order ruling on Defendants' Second Motion to Compel (doc. 218), the Court noted that Plaintiff failed to review the documents and electronically stored information found in Plaintiff's patent counsel's office.  The Court finds that these files (referred to by the Court and the parties as the hard copy Hovey Files and the ESI Hovey Files) may very well contain documents responsive to Document Request No. 52.  The Court therefore concludes that Plaintiff could not, as alleged, have reviewed and produced all documents responsive to Document Request No. 52.

The Court therefore orders Plaintiff to serve Defendants with a supplemental response to Document Request No. 52 which identifies by Bates number those documents that have already been produced to Defendants and that are responsive to the request.  In addition, Plaintiff shall produce any additional responsive documents to Defendants that have not previously been produced to Defendants *without objection*.  The Court has already concluded that Plaintiff waived its privilege objection, and the Court finds there is no evidence that Plaintiff timely asserted any other objections

---

[94] *See, e.g., Lipari v. U.S. Bancorp., N.A.*, No. 07-2146-CM, 2008 WL 2704473, at *1 n. 2 (D. Kan. July 8, 2008) (objections to requests for production waived when not asserted in a timely response to the requests).

to Document Request No. 52. Finally, as part of the quick peek of the hard copy Hovey Files and the ESI Hovey Files ordered by the Court in its Memorandum and Order ruling on Defendants' Second Motion to Compel, Defendants shall be permitted to flag all documents and information responsive to Document Request No. 52 and Plaintiff shall be required to produce those documents without objection. However, any responsive documents or information flagged by Defendants which were previously noted on a privilege log created by Plaintiff and provided to Defendants shall not lose their privileged status.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel or Exclude Expert Testimony of Brian Clothier (doc. 151) is granted in part and denied in part. Because the Motion is granted in part and denied in part, the Court " may . . . apportion the reasonable expenses for the motion."[95] The Court finds that each party shall bear its own expenses incurred in connection with the Motion.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel or Exclude Expert Testimony of Brian Clothier (doc. 151) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff shall not be required to provide Defendants with an expert report from Brian Clothier under Fed. R. Civ. P. 26(a)(2)(B) at this time.

**IT IS FURTHER ORDERED** that **within 14 days** of the date of this Memorandum and Order, Plaintiff shall serve Defendants with a supplemental response to Document Request No. 52 which identifies by Bates number those documents that have already been produced to Defendants and that are responsive to the request. In addition, **within 14 days** of the date of this Memorandum

---

[95] Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses."); Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may . . . apportion the reasonable expenses for the motion.").

and Order, Plaintiff shall produce any additional responsive documents to Defendants that have not previously been produced to Defendants *without objection*. In addition, as part of the quick peek of the hard copy Hovey Files and the ESI Hovey Files ordered by the Court in its Memorandum and Order ruling on Defendants' Second Motion to Compel, Defendants shall be permitted to flag all documents and information responsive to Document Request No. 52 and Plaintiff shall be required to produce those documents *without objection*. However, any responsive documents or information flagged by Defendants which were previously noted on a privilege log created by Plaintiff and provided to Defendants shall not lose their privileged status.

      **IT IS SO ORDERED**.

      Dated in Kansas City, Kansas, this 28th day of April 2010.

s/ David J. Waxse<br>
David J. Waxse<br>
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties