## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THERMAL SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:08-cv-02220-JWL-DJW |
| IMURA INTERNATIONAL U.S.A., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion to Quash Plaintiff's Notice to Take Attorney Depositions and for Protective Order (doc. 161). The Motion is fully briefed and is therefore ripe for consideration. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.     BACKGROUND & CONFERRING REQUIREMENTS**

The facts of this case are well known to the parties and the Court and will not be repeated here. A detailed description of the background in this case is set forth in the Court's December 4, 2009 Memorandum and Order (doc. 141) and is incorporated herein by reference.

On December 31, 2009, Plaintiff served its Notice to Take Deposition of Bryan P. Stanley on January 15, 2010.[1] On January 5, 2010, a subpoena was issued commanding Mr. Stanley to appear for his deposition on January 15, 2010, and to bring certain documents with him to his deposition.[2] On January 8, 2010, Plaintiff served its Notice to Take Deposition of Phil Kusnetzky

---

[1] Notice to Take Dep. (doc. 154).

[2] Subpoena to Testify at a Dep. in a Civil Action (doc. 156).

on January 15, 2010,[3] and its Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6).[4]

Defendants object to Plaintiff's attempt to depose Mr. Stanley and Mr. Kusnetzky, both of whom are attorneys who have represented Defendants. Defendants also object to five of the topics identified in Plaintiff's Rule 30(b)(6) deposition notice. After meeting and conferring with Plaintiff concerning their opposition to these deposition notices and the subpoena, Defendants filed this Motion seeking the following relief: (a) an order quashing the subpoena served on Mr. Stanley; (b) an order quashing the deposition notices served on Mr. Stanley and Mr. Kusnetzky; (c) a protective order preventing the depositions of Mr. Stanley and Mr. Kusnetzky; and (d) an order quashing Topic Nos. 7, 20, 21, 22, and 24 in Plaintiff's Rule 30(b)(6) deposition notice.

On March 1, 2010, the Court held a hearing to discuss Defendants' Motion, along with several other discovery motions pending before the Court. The Court held a follow-up hearing on March 15, 2010.

Having reviewed the relevant pleadings and the statements of counsel during the hearings on the Motion, the Court finds that the parties made reasonable efforts to confer concerning the matter in dispute.[5] The Court will therefore consider the Motion on the merits. The Court will first address Defendants' request that the Court enter an order prohibiting the depositions of Messrs. Stanley and Kusnetzky and will then address Defendants' request that the Court quash certain topics in Plaintiff's Rule 30(b)(6) deposition notice.

---

[3] Notice to Take Dep. (doc. 158).

[4] Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) (doc. 157).

[5] D. Kan. Rule 37.2; Fed. R. Civ. P. 37(a)(1).

2

## II. DEPOSITIONS OF STANLEY AND KUSNETZKY

### A. Standards

Defendants move to quash the subpoena directed to Mr. Stanley and the deposition notices directed to Messrs. Stanley and Kusnetzky under Fed. R. Civ. P. 45 and Fed. R. Civ. P. 26(c). Under Fed. R. Civ. P. 45, the Court is required to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies, or [if it] subjects a person to undue burden."[6] In addition, the court has discretion to control discovery under Fed. R. Civ. P. 26(c).[7] Under Fed. R. Civ. P. 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[8] Such orders may include completely prohibiting the discovery, forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters.[9] "One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected."[10]

Attorneys are not immune from being deposed, and courts rarely grant a protective order barring a deposition unless extraordinary circumstances call for such an order.[11] A request to take

---

[6] Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv).

[7] *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 n. 8 (10th Cir. 1995).

[8] Fed. R. Civ. P. 26(c)(1).

[9] *Id.*

[10] *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) (citing *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[11] *Id.* (citing *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996)).

the deposition of opposing counsel may constitute such extraordinary circumstances.[12] In *Boughton v. Cotter Corp.*,[13] the Tenth Circuit adopted the three-part test set out in *Shelton v. American Motors Corp.*[14] for determining when the court should allow the deposition of opposing counsel.[15] The Tenth Circuit explained:

> The *Shelton* court held that depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[16]

The burden is on the party seeking the deposition to establish that the criteria are met.[17]

**B.  Analysis**

Defendants argue that the Court should enter an order barring the depositions of Messrs. Stanley and Kusnetzky because Plaintiff has failed to satisfy the *Shelton* criteria. Before turning to the question of whether Plaintiff has satisfied the *Shelton* criteria, the Court must first determine whether the *Shelton* criteria are applicable here. Thus, the Court must determine whether Messrs. Stanley and Kusnetzky constitute "opposing counsel" for purposes of applying the *Shelton* criteria.

---

[12] *Id.* (citing *Mike*, 169 F.R.D. at 378).

[13] 65 F.3d 823 (10th Cir. 1995).

[14] 805 F.2d 1323 (8th Cir. 1986).

[15] In *Thiessen v. General Electric Capital Corp.*, the Tenth Circuit explained that "*Shelton* was adopted by this court in *Boughton v. Cotter Corp.*" *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001).

[16] *Boughton*, 65 F.3d at 829.

[17] *Simmons*, 191 F.R.D. at 630 (citing *Shelton*, 805 F.2d at 1326).

4

### 1. Are Messrs. Stanley and Kusnetzky "Opposing Counsel" for Purposes of Applying the Shelton Criteria?

Mr. Stanley is a patent lawyer who has been involved in the litigation between Plaintiff and Defendants since it was first filed in Johnson County, Kansas District Court in February 2006.[18] Mr. Stanley appeared as counsel for Defendants Vita Craft and Imura International at the first hearing in Johnson County, Kansas District Court. Mr. Stanley has continued to represent Defendants Vita Craft and Imura International along with Mr. Fields and Mr. Leitch, including meeting with Mr. Fields and Mr. Leitch (both of whom are counsel of record for Defendants) to discuss case strategy and other case-related issues in this litigation.[19]

Mr. Kusnetzky acted as legal counsel for Defendants from 2002 through 2007.[20] In his capacity as legal counsel for Defendants, Mr. Kusnetzky advised Defendants with respect to the license agreements Defendant Imura International entered into with Plaintiff in 2003 and 2004, the assignment of the license agreements to Defendant Vita Craft in 2003 and 2004, the negotiation of the Merchandising License Agreement with Regal Ware in 2004, the dispute with Regal Ware arising out of the Merchandising License Agreement with Defendant Vita Craft in 2005 and 2006, disputes with Plaintiff arising out of the license agreements in 2004, 2005, and 2006, and the litigation Defendants Vita Craft and Imura International filed against Plaintiff in Johnson County,

---

[18] Aff. of Bryan P. Stanley (attached as Ex. C to Mem. in Supp. of Defs.' Mot. to Quash Pl.'s Notice to Take Attorney Deps. and for Protective Order (doc. 162)) at ¶¶ 3-4.

[19] *Id.* at ¶¶ 5, 8-9.

[20] Aff. of Gary E. Martin (attached as Ex. D to Mem. in Supp. of Defs.' Mot. to Quash Pl.'s Notice to Take Attorney Deps. and for Protective Order (doc. 162)) at ¶ 3. Gary Martin is the president of Defendant Vita Craft. *Id.* at ¶ 2.

Kansas District Court in February 2006.[21] In addition, Mr. Kusnetzky has participated in meetings with Defendants and Mr. Fields to discuss litigation strategy, and has exchanged correspondence within that group outlining litigation strategy related to the claims at issue in this case.[22]

The Court finds the *Shelton* court's rationale for limiting the depositions of opposing counsel helpful in determining whether Messrs. Stanley and Kusnetzky constitute opposing counsel for purposes of applying the *Shelton* criteria. The *Shelton* court explained:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.[23]

While neither Mr. Stanley nor Mr. Kusnetzky has entered an appearance on behalf of Defendants in this case, the Court concludes that both Mr. Stanley and Mr. Kusnetzky constitute opposing counsel for the purposes of applying the *Shelton* criteria. Both Messrs. Stanley and Kusnetzky acted as legal advisors to Defendants in connection with the events underlying this litigation, both have been involved in advising Defendants concerning this litigation and the disputes involved in this litigation, and both discussed litigation strategy with Defendants and their counsel

---

[21] *Id.* at ¶ 4.

[22] *Id.* at ¶ 5.

[23] *Shelton*, 805 F.2d at 1327.

of record.²⁴ The Court will therefore apply the *Shelton* criteria.

### 2. *Applying the Shelton Criteria*

Plaintiff identifies five areas on which it believes it is entitled to depose Messrs. Stanley and Kusnetzky: (1) inventorship of the subject matter claimed in the '356 application, (2) representations to Regal Ware regarding the list of patents attached to the Merchandising License Agreement, (3) Defendant Imura International U.S.A., Inc.'s representation regarding its due diligence, (4) Defendants' claim that Defendant Imura International U.S.A., Inc. assigned the license agreements to Defendant Vita Craft, and (5) Defendants' assertion that no commercialization had occurred because of Plaintiff.²⁵ In order to depose Messrs. Stanley and Kusnetzky, Plaintiff has the burden of showing that: (1) no other means exist to obtain the information except to depose Messrs. Stanley and Kusnetzky; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

#### (a) *No other means exist to obtain the information except to depose Messrs. Stanley and Kusnetzky*

Plaintiff has the burden to show that no other means exist to obtain the information identified in the five categories listed by Plaintiff in its response brief except to depose Messrs. Stanley and Kusnetzky. According to Plaintiff, it has attempted, without success, to obtain this information by asking questions of certain deposition witnesses, including Gary Martin, the president of Defendant Vita Craft, Defendant Mamoru Imura, and employees of Defendant Vita Craft. In addition, Plaintiff

---

²⁴ *See also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, No. 01-2193-JWL, 2002 WL 1822404, at *3 (D. Kan. June, 13, 2002) (applying *Shelton* criteria because the attorney plaintiff sought to depose had acted as a legal advisor to defendants in connection with the events underlying this litigation).

²⁵ Pl.'s Resp. to Defs.' Mot. to Quash and for Protective Order (doc. 184) at 12-20.

7

claims that it has "served written discovery, including 21 standard and contention interrogatories on both [Defendants Imura International U.S.A., Inc.] and Vita Craft and a number of document requests that, to date, have yielded more than 20,000 pages of paper documents, approximately 25 GB of ESI, and [D]efendants' privilege log that contains 1,318 document entries."[26]

The Court finds that Plaintiff's arguments fall short of demonstrating that Plaintiff had no other means of obtaining the five categories of information other than to depose Messrs. Stanley and Kusnetzky. Although Plaintiff claims it has served written discovery, Plaintiff does not identify for the Court a single interrogatory, request for admission, or document request that Plaintiff served which seeks the information that Plaintiff believes it is entitled to obtain from Messrs. Stanley and Kusnetzky. Further, Plaintiff fails to explain why it could not have served such discovery.

In addition, Plaintiff essentially admits that there are other means for obtaining the five categories of information. In its response brief, Plaintiff acknowledges that the Rule 30(b)(6) deposition notice at issue in the Motion (and discussed by the Court below) identifies four topics for deposition which cover information that Plaintiff believes Messrs. Stanley and Kusnetzky possess.[27] Thus, by Plaintiff's own admission, there are other means (such as the Rule 30(b)(6) deposition) to obtain the information it seeks from Messrs. Stanley and Kusnetzky.

The Court therefore concludes that Plaintiff has failed to satisfy the first *Shelton* criteria.

### (b) *The information sought is relevant and non-privileged*

---

[26]*Id.* at 2. This discovery was conducted in the Johnson County, Kansas litigation before this case was moved to this forum. The parties agreed to use the discovery conducted in the Johnson County, Kansas litigation in this litigation. *Id.* at 3.

[27] *Id.* at 8.

In order to depose opposing counsel, Plaintiff must also show that the information it seeks from Messrs. Stanley and Kusnetzky is relevant and non-privileged. Having reviewed Plaintiff's entire response brief, the Court finds that Plaintiff has failed to demonstrate how the information is relevant to any of the claims or defenses in this case. Although Plaintiff discusses at length its desire to obtain the information and provides the Court with some basis for concluding that Messrs. Stanley and Kusnetzky possess some of that information, Plaintiff neglects to take the important step of connecting the information it seeks to the facts that are of consequence in this case.

However, even if the Court were to conclude that the information Plaintiff seeks is somehow relevant to the issues in this case, Plaintiff fails to articulate any argument as to why the information it seeks is non-privileged. It is not the Court's job to attempt to put together such an argument for Plaintiff. Thus, the Court concludes that Plaintiff has failed to establish the second *Shelton* criteria.

### *(c)* *The information is crucial to the preparation of the case*

Plaintiff also has the burden of demonstrating how the information it seeks from Messrs. Stanley and Kusnetzky is crucial to preparation of the case. Again, the Court has reviewed Plaintiff's entire response brief and cannot find any argument as to why the information sought is crucial to Plaintiff's preparation of the case. In the absence of such an argument, the Court concludes that Plaintiff has failed to satisfy its burden to demonstrate the third *Shelton* criteria.

**C.  Conclusion**

The Court concludes that Plaintiff has not satisfied any of the *Shelton* criteria. The Court will therefore quash the subpoena directed to Mr. Stanley as well as the deposition notices directed to Messrs. Stanley and Kusnetzky and will enter a protective order prohibiting their depositions.

### III.  RULE 30(b)(6) DEPOSITION TOPICS

Defendants also seek an order quashing the following five topics found in Plaintiff's Rule 30(b)(6) deposition notice:

> 7.  With respect to the Worldwide License Agreement or the Software License, all communications, *including those with or among counsel*, relating to the negotiation, drafting, interpretation, or enforcement of any provision that you contend [Plaintiff] has breached.
>
> 20.  Any and all communications, *including those with or among counsel*, relating to the same subject matter as the communication from Phil Kusnetzky to Brenda Youness disclosed in the July 9, 2004, e-mail message memorialized in Deposition Exhibit 91.
>
> 21.  Any and all communications, *including those with or among counsel*, relating to the same subject matter as the communication with Phil Kusnetzky disclosed in the May 17, 2004, "Thermal Solutions Meeting Minutes" memorialized in Deposition Exhibit 92.
>
> 22.  All communications, *including those with or among counsel*, relating to the decision to submit to Regal Ware the list of patent properties attached as Schedule A.1 to the Merchandise License Agreement between Regal Ware and Vita Craft.
>
> 24.  With respect to the Merchandise License Agreement, all communications, *including those with or among counsel*, relating to the negotiation, drafting, interpretation, or enforcement of any provision relating to the ownership or licensing of intellectual property rights or any warranty or representation relating to said provisions.[28]

#### A.  Standards

Under Fed. R. Civ. P. 30(b)(6), a party who notices the deposition of a corporation must describe the matters for the examination with reasonable particularity.[29] The corporation must then designate a person to testify on its behalf about the information known or reasonably available to

---

[28] Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) (doc. 157) (emphasis added to highlight Defendants' issues with the notice).

[29] Fed. R. Civ. P. 30(b)(6).

the corporation.[30] As a general rule, the Court will find privilege objections to a topic identified in the Rule 30(b)(6) notice to be premature unless the topic on its face calls for testimony invading the attorney-client privilege or work product doctrine.[31] The Court recognizes, however, that a specific question asked during the deposition could elicit privileged information, in which case the privilege objection may be asserted at that time.[32]

**B.     Analysis**

Defendants argue that Topics 7, 20, 21, 22, and 24 in Plaintiff's Rule 30(b)(6) deposition notice, which seek all communications, including those with or among counsel, concerning certain matters, on their face "call for testimony invading the attorney-client privilege or work product doctrine and are therefore improper."[33] Defendants ask the Court to enter an order quashing these topics.

The Court is not convinced that these topics, on their face, call for testimony invading the attorney-client privilege or work product doctrine. Defendants' only argument that these topics, on

---

[30] *Id.*

[31] *Hartford Fire Ins. Co. v. P & H Cattle Co.*, Civ. A. No. 05-2001-DJW, 2009 WL 2951120, at *11 (D. Kan. Sept. 10, 2009) (holding that privilege objections were premature where topics did not on their face call for privileged testimony); *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 529 (D. Kan. 2006) (holding that blanket assertions of privilege before any questions have been asked at a Rule 30(b)(6) deposition are premature); *Carolina Indus. Prods., Inc. v. Learjet Inc.*, No. Civ. A. 00-2366-JWL, 2001 WL 1155297, at *3 (D. Kan. Aug. 10, 2001) (finding topic on its face did not call for testimony invading privilege, but recognizing that objections could be asserted to specific deposition questions eliciting privileged or protected information).

[32] *Hartford*, 2009 WL 2951120, at *11.

[33] Mem. in Supp. of Defs.' Mot. to Quash Pl.'s Notice to Take Attorney Deps. and for Protective Order (doc. 162) at 16.

their face, seek privileged information, is that they specifically seek testimony on any and all communications, including those with or among counsel, on subjects on which Defendants were represented by counsel, and, therefore, the topics necessarily seek to elicit information protected by the attorney-client privilege and work product doctrine.[34] The Court does not agree. The mere fact that a communication is between counsel or between client and counsel does not make the communication privileged. Rather, under federal common law, the essential elements of the attorney-client privilege are: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.[35] Further, to establish work product protection, a party must show that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[36] Defendants fail to connect any of these elements to the five deposition topics they seek to quash.

---

[34] *Id.*; Defs.' Reply in Supp. of Their Mot. to Quash Pl.'s Notice to Take Attorney Deps. and for Protective Order (doc. 189) at 27.

[35] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2006 WL 266599, at *1 -2 (D. Kan. Feb. 1, 2006) (citations omitted). Because this action arises under a federal statutory scheme, federal law provides the rule of decision as to the application of the attorney-client privilege. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir.1997) (federal privilege law applies to federal claims). However, the Court notes there is no real conflict between federal and Kansas law regarding the attorney-client privilege. *See Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan.1998).

[36] *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000).

The Court concludes that Topics 7, 20, 21, 22, and 24, which seek communications with or among counsel concerning certain matters, do not on their face seek testimony protected by the attorney-client privilege or work product doctrine. The Court recognizes, however, that certain questions falling under these topics could elicit such privileged or protected information. The Court finds that the appropriate method of dealing with these topics is to allow the deposition to take place, thereby allowing Plaintiff's counsel to explore the background facts concerning the attorney-client privilege or work product doctrine and enabling Defendants' counsel to substantiate any objections made on those grounds.

**C.     Conclusion**

In light of the above, the Court denies Defendants' request that Topics 7, 20, 21, 22, and 24 in Plaintiff's Rule 30(b)(6) deposition notice be quashed.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion is granted in part and denied in part. Having granted in part and denied in part the Motion, the Court "may . . . apportion the reasonable expenses for the motion."[37] The Court finds that each party shall be responsible for its own expenses incurred in connection with the Motion.

---

[37] Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses."); Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may . . . apportion the reasonable expenses for the motion.").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Quash Plaintiff's Notice to Take Attorney Depositions and for Protective Order (doc. 161) is granted in part and denied in part.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, this 28th day of April 2010.

s/ David J. Waxse  
David J. Waxse  
U.S. Magistrate Judge

cc:  All counsel and *pro se* parties.