IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HR TECHNOLOGY, INC., )
f/k/a THERMAL SOLUTIONS, INC., )
                               )
             Plaintiff, )
                               )
       v. )                  Case No. 08-2220-JWL
                               )
IMURA INTERNATIONAL U.S.A., INC.; )
VITA CRAFT CORPORATION; and )
MAMORU IMURA, an individual, )
                               )
             Defendants. )
                               )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion for discovery sanctions (Doc. # 282). The motion is **granted in part**, as set forth below. Plaintiff's request for oral argument on the motion for sanctions (Doc. # 297) is **denied**.

### **I.**    **Background**

On April 28, 2010, in Order # 219, the Magistrate Judge ordered plaintiff to produce to defendants, without objection or the assertion of privilege, all documents responsive to defendants' Request 52, which sought all documents provided to or reviewed by or relied upon by plaintiff's expert witnesses. At a hearing on May 13, 2010, this Court denied plaintiff's motion for review of that order. Plaintiff produced

additional documents, but defendants subsequently filed a motion seeking sanctions on the basis that plaintiff had still failed to produce all responsive documents in compliance with the orders of the Magistrate Judge and this Court.

By Memorandum and Order of November 17, 2010 (Doc. # 280), the Court granted the motion for sanctions in part, and it ordered plaintiff to conduct additional document reviews and to produce certain additional documents. Although the Court denied defendants' request for harsh sanctions, including a prohibition of expert testimony by Brian Clothier, plaintiff's principal, it did order plaintiff to pay defendants' fees incurred with respect to the motion at issue, as a sanction for plaintiff's violations and its failure to meet the deadlines of the previous orders.

In response to Order # 280, plaintiff did produce some additional documents, but it withheld two redacted documents that the Court had ordered produced in their entirety. Instead, plaintiff filed a motion for reconsideration of Order # 280 with respect to those documents. As a part of its response to the motion for reconsideration, defendants filed the instant cross-motion for sanctions. On March 4, 2011, the Court denied plaintiff's motion for reconsideration, and plaintiffs subsequently produced the withheld documents as ordered. The Court reserved ruling on the cross-motion for sanctions at that time, and it addresses that motion now.

**II.     Analysis**

1. Defendants argue that plaintiff has failed to produce documents as required by Order # 219 and Order # 280, that such failure should be treated as a contempt of court pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii), and that the Court should dismiss plaintiff's remaining patent claims as a sanction. As an alternative sanction, defendants request an order striking Mr. Clothier as an expert witness and an order granting defendants a "quick peek" of all documents "considered (including authored), read, or reviewed by Mr. Clothier, or that were exchanged between Mr. Clothier and [counsel], that relate in any way to this litigation or issues herein so that Defendants, not Plaintiff, can identify and mark for production all documents related to Mr. Clothier's expert opinions."

2. In support of their request for sanctions, defendants first argue that plaintiff, by its failure to produce the two unredacted documents by the deadline set by the Court in Order # 280, "continues to ignore the Court's orders." As noted above, plaintiff moved for reconsideration of the Court's order instead of producing those documents. Defendants correctly note that plaintiff did not seek an extension or stay of the deadline for producing the documents during the pendency of the reconsideration motion (which was also filed late); nevertheless, plaintiff's withholding those documents is understandable (despite the fact that the motion for reconsideration lacked merit), as production would have rendered the motion effectively moot. Moreover, plaintiff's failure to produce the redacted documents in their entirety already served as one basis

3

for the sanction previously imposed by the Court. Thus, the Court declines to sanction plaintiff further for withholding these documents during the pendency of the motion for reconsideration.

3. Defendants next argue that the documents that plaintiff did produce—relating to a dispute between plaintiff and Cooktek—were clearly responsive, and defendants therefore "speculate that Plaintiff is not including documents that relate to the subjects of Mr. Clothier's opinions, but only documents that actually address his opinions." Defendants have misstated the scope of Request 52 as interpreted by the Court, however. In Order # 280, the Court ruled that the request, as consistently defined by defendants to plaintiff and to the Court, was limited to documents relating to the expert's opinions, and not to the litigation generally or to other subjects. Thus, plaintiff would not be required to produce all responsive documents relating merely to the subjects (the patents' invalidity? the patents generally? the subject technology?) of Mr. Clothier's opinions. The Court therefore rejects defendants "speculation" that other responsive documents must exist based on an overly broad statement of the scope of the request.

4. In their reply brief, defendants also suggest that plaintiff should have produced other versions of the redacted documents authored by Mr. Clothier. That specific argument—like defendants' general insistence on receiving documents authored by Mr. Clothier—is related to defendants' previous assertion that documents authored by Mr. Clothier must fall within the scope of the Request 52, which calls for documents

4

"provided to, reviewed, or relied upon" by Mr. Clothier. The Court noted in Order # 280 that "under the common meaning of the word, a document authored by Mr. Clothier would not necessarily have been "reviewed" by him unless he reread or reconsidered the document after its authorship for a purpose relating to his opinions." Defendants now argue that documents authored by Mr. Clothier were also "considered" by him pursuant to language in *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 181494 (D. Kan. Jan. 31, 2002), in which the Magistrate Judge concluded that, for purposes of Fed. R. Civ. P. 26(a)(2)(B), an expert "considered" certain material authored or received by him. *See id.* at *10. Defendants further argue that documents authored by Mr. Clothier must therefore be produced as responsive to a separate, subsequent request for documents "considered" by Mr. Clothier.

The Court rejects this argument by defendants. First, in *Western Resources*, the Magistrate Judge merely found that certain material authored by the expert was "considered" by him in that case; the Magistrate Judge certainly did not make any sort of blanket statement suggesting that, for purposes of Rule 26(a)(2), an expert has necessarily "considered" all documents that he has previously authored. Second, plaintiff's response to the subsequent document request has never been placed at issue before the Court, and Request 52—the only request properly at issue—does not seek documents "considered" by Mr. Clothier. The Court will not base any sanction at this time on plaintiff's alleged failure to respond to some other document request, as plaintiff has not violated any Court order with respect to such request.

5. In response to defendants' motion for sanctions, plaintiff submitted a declaration from Mr. Clothier concerning plaintiff's attempts to produce documents relating to his expert opinions. As pointed out by defendants in their reply brief, some of Mr. Clothier's statements regarding those efforts are troubling. Specifically, Mr. Clothier has attempted to distinguish between his testimony as a fact witness (as plaintiff's principal) and as inventor of the patented technology on the one hand, and his testimony as an expert witness on the other. Thus, Mr. Clothier defines his "expert opinions" as "those that go beyond [his] testimony as inventor and fact witness." Similarly, any testimony concerning Mr. Clothier's understanding of how the patents employ certain technology or differ from each other would be offered "in [his] role as the inventor and as the product developer regarding these types of matters, and not in the role of an expert witness." Testimony concerning Mr. Clothier's understanding of the state of the art would also be "in [his] role as the inventor" and not "in the form of expert opinions like defendants' expert purports to offer." Finally, Mr. Clothier disputes that he will offer expert testimony to refute the opinions of defendants' expert, although he concedes that he may have opinions regarding instances in which that expert was sloppy or demonstrated a misunderstanding of the relevant science; instead, Mr. Clothier states that he may testify about his "understanding of the science, not to 'refute' their expert's opinion, but instead to impeach his credibility."

This position by plaintiff and Mr. Clothier distinguishing between expert opinions and mere opinions given in some other capacity is not well-taken. Mr. Clothier's role

6

as the inventor and plaintiff's principal may have been relevant to the Magistrate Judge's ruling that Mr. Clothier was not required to provide an expert report under Rule 26(a)(2), but that role has no meaning for purposes of trial or plaintiff's response to Request 52. Under Fed. R. Evid. 702, expert testimony includes any testimony based on scientific, technical, or other specialized knowledge. Because Mr. Clothier would be relying on specialized knowledge, any opinions or inferences he would offer in testimony would necessarily constitute "expert opinions"—regardless of whether Mr. Clothier formed that opinion while inventing the technology, operating plaintiff, litigating the present action, or contradicting defendants' expert.

Request 52 (as interpreted by the Court) seeks certain documents relating to Mr. Clothier's expert opinions. Mr. Clothier's declaration suggests that, in responding to Request 52, plaintiff produced only responsive documents relating to certain opinions formed by Mr. Clothier, but not those relating to opinions formed "as inventor" or "as a fact witness" or in response to the opinions of defendants' expert. Thus, in making this unfounded distinction between types of expert opinions, plaintiff has violated the Court's prior orders to produce all documents responsive to Request 52. Plaintiff is required to conduct the necessary review immediately and to produce all additional documents responsive to Request 52 by **April 29, 2011**.

6. The unredacted documents finally produced by plaintiff (and supplied to the Court) also raise a serious issue regarding the sufficiency of plaintiff's efforts to comply with its discovery requirements and the Court's orders. In the first document,

7

an e-mail by Mr. Clothier to his counsel, plaintiff redacted the second of the e-mail's two substantive paragraphs, which read as follows:

> Attached is an unsolicited look at what claims from '169 I believe we can clearly sue Imura for infringing. As you will see, I also conjecture how they will attack our argument that the particular claim reads on the RFIQ system. I also conjecture how they will try to invalidate the particular claim.
>
> Please let me know if this is helpful to your thinking and feel free to email/call me to discuss. I did this based upon John Collins telling me that he thought we should re-plead our infringement case and limit it to one or only few claims.

When plaintiff produced this document as redacted in response to Order # 219 (and this Court's ruling upholding that order), it redacted the second paragraph on the basis that the redacted portion was non-responsive. Presumably, plaintiff believed that the first paragraph related to Mr. Clothier's expert opinions. After the Court ruled that plaintiff could not redact non-responsive portions of a responsive document, plaintiff argued that the entire document was in fact non-responsive, but the Court rejected that untimely argument.

What concerns the Court now is the basis for plaintiff's original redaction of the second paragraph as non-responsive. In the first paragraph, Mr. Clothier described an attached document as including a certain analysis. In the second paragraph, Mr. Clothier revealed the basis for his work creating that analysis. It is difficult to imagine how the first paragraph describing the analysis could be responsive while the second paragraph, which further describes the analysis by giving a basis for it, would not be responsive.

8

The only conclusion that may drawn is that plaintiff redacted the second paragraph in the hope of avoiding the disclosure of information deemed more sensitive or harmful.

The second document is a 27-page document entitled "Arguments Against [defendants' expert] Deavours' Claims of Invalidity." In producing the document, plaintiff did not alter the first two pages, which comprise Part A of the document, entitled "Basic Strategy." Plaintiff redacted the remaining pages, however, which comprise Part B, entitled "Line by Line Analysis of Appendices A, B, and C of Deavours' Report." Again, the Court can conceive of no rationale under which Part A would be responsive (as relating to Mr. Clothier's opinions) and Part B, which provides the detail of the analysis, would not be responsive—other than an attempt by plaintiff to hide more sensitive or harmful information.

Thus, plaintiff did not base its redactions on any reason relating to the actual request (and not for the reason represented to the Court). Even if plaintiff should not have been required to produce any part of the documents in the first place (as it eventually argued to the Court), its conduct in redacting the documents improperly cannot be countenanced or excused.

7. Accordingly, because of these two violations of the Court's discovery orders revealed by Mr. Clothier's declaration and the unredacted documents, the Court in its discretion finds that a sanction is appropriate pursuant to Rule 37(b)(2)(A). The Court does not believe that plaintiff's conduct warrants the harsh sanction of a dismissal of claims or an order giving defendants access to all communications between Mr.

9

Clothier and his counsel relating to the litigation. Instead, the Court finds that a just sanction against plaintiff is an instruction to the jury that plaintiff disobeyed Court orders with respect to its production of documents relating to Mr. Clothier's expert opinions. *See, e.g.*, *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1181-83 (10th Cir. 1999) (upholding discovery sanction of jury instruction that party violated discovery order). The exact language of that instruction may be addressed in the parties' proposed jury instructions.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for discovery sanctions (Doc. # 282) is **granted in part**, as set forth herein. Plaintiff shall produce any additional documents responsive to Request 52 on or before **April 29, 2011**.

IT IS FURTHER ORDERED THAT plaintiff's request for oral argument (Doc. # 297) is **denied**.

IT IS SO ORDERED.

Dated this 20th day of April, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
