IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HR TECHNOLOGY, INC., )
f/k/a THERMAL SOLUTIONS, INC., )
 )
      Plaintiff, )
 )
  v. ) Case No. 08-2220-JWL
 )
IMURA INTERNATIONAL U.S.A., INC.; )
VITA CRAFT CORPORATION; and )
MAMORU IMURA, an individual, )
 )
      Defendants. )
_____)
 )
IMURA INTERNATIONAL U.S.A., INC. )
and VITA CRAFT CORPORATION, )
 )
      Counterclaim Plaintiffs, )
 )
  v. )
 )
HR TECHNOLOGY, INC., )
f/k/a THERMAL SOLUTIONS, INC., )
 )
      Counterclaim Defendant. )
 )
_____)

## MEMORANDUM AND ORDER

This matter presently comes before the Court on plaintiff's Renewed Motion to Dismiss or, in the Alternative, Motion to Alter or Amend the Court's Final Judgment (Doc. # 472). By that motion, plaintiff HR Technology, Inc. ("HRT") asks the Court to vacate its summary judgment ruling invalidating various claims in three patents held by

HRT and to dismiss defendants' claims for declaratory judgments of invalidity for lack of subject matter jurisdiction. For the reasons set forth below, the Court **denies** the motion.

I. **Background**

In this case, in the form of declaratory judgment counterclaims and affirmative defenses, defendants sought declarations of invalidity, non-infringement, and non-enforceability with respect to three patents held by HRT (the '169 Patent, the '585 Patent, and the reissued '513 Patent). At various times, in this case and in other litigation between the parties, HRT has alleged that defendants infringed those three patents. In the pretrial order in this case, however, HRT preserved a claim only for infringement of Claims 19, 22, 26, and 36 of the '169 Patent.

HRT moved for summary judgment on defendants' declaratory judgment counterclaims, on the basis that the Court lacked subject matter jurisdiction over those claims because no justiciable case or controversy existed under Article III of the United States Constitution. Specifically, HRT argued that in this case it alleged only *past* infringement by defendants and that defendants did not plan to engage in the allegedly infringing activity—the manufacture or sale of certain cookware using RFID technology—in the future. By Memorandum and Order of April 13, 2010 (Doc. # 217), the Court denied HRT's motion, ruling that when viewed in defendants' favor, the evidence was sufficient to create an issue of fact regarding whether defendants did still

intend to sell such cookware in the future. In so ruling, the Court cited an affidavit by Gary Martin, president of defendant Vita Craft Corporation ("Vita Craft"). The Court summarized that affidavit as containing the following statements by Mr. Martin:

> as of February 2006, when [HRT] purported to terminate the parties' license agreements, Vita Craft had spent over $6,000,000 in the development, manufacture, and sale of its cooking systems, including amounts paid to [HRT] as licensing fees and for software development; that Vita Craft entered into agreements and negotiated with other companies to manufacture and sell the products; that Vita Craft made and sold the product; that Vita Craft had over $3,700,000 in inventory and work-in-process for the product at the time of the termination, which Vita Craft has maintained; that Vita Craft stopped making and selling the product because [HRT] terminated the license agreements and threatened claims of patent infringement; and that Vita Craft intends to resume manufacturing and selling the product with its existing inventory and work-in-process if defendants prevail on their declaratory judgment counterclaims.

The Court also rejected HRT's argument that defendants could not resume manufacturing the product because Section 19 of the parties' license agreements prohibited defendants from using certain confidential information after termination of those agreements. On that issue, the Court reasoned:

> Defendants might intend to resume such activity even if it would constitute a breach (perhaps even accounting for such liability as a cost of doing business), and [HRT] has not shown that such intent could not still give rise to an actual controversy between the parties. Moreover, defendants have expressed an intent, at the least, to sell its existing inventory, and [HRT] has not shown how that conduct would involve the use of confidential information in violation of the license agreements.

HRT subsequently moved to dismiss various counterclaims and affirmative defenses asserted by defendants relating to the three patents. HRT again argued that the

Court lacked jurisdiction because there was no present case or controversy concerning defendants' infringement of certain claims in those patents. HRT based that argument solely on its unilateral covenants not to sue defendants for infringement as to any claim of the '585 Patent and the '513 Patent or as to Claims 1-17, 23, 24, 27-35, and 37-56 of the '169 Patent. By Memorandum and Order of June 3, 2011 (Doc. # 319), the Court denied these motions. The Court held that the covenants did not eliminate any case or controversy concerning the potential infringement of those patent claims because the scope of the covenants (as clarified by HRT in its brief), which covered defendants' previously-produced cookware system, did not extend to all possible future applications of the patents' technology to defendants' cookware.

By Memorandum and Order of March 9, 2012 (Doc. # 382), the Court ruled that the claims of the '585 Patent and the '513 Patent, as well as Claims 1-4, 10-12, 15-33, 36-39, 48, 49, 55, and 56 of the '169 Patent, were invalid as obvious. Thus, the Court granted summary judgment to defendants on HRT's claim for infringement of Claims 19, 22, 26, and 36 of the '169 Patent. The Court also granted summary judgment to defendants on their claim for a declaratory judgment of invalidity with respect to those patents and claims.

On April 16 and 17, 2012, the Court conducted a bench trial on the corporate defendants' claim seeking a declaration that HRT's three patents were unenforceable

4

because of inequitable conduct by HRT before the Patent and Trademark Office.[1] At trial, based on Vita Craft's stipulation that it still intended to produce cookware in the future, the Court again rejected this argument that it lacked subject matter jurisdiction over the inequitable conduct claim. In its Memorandum and Order of April 24, 2012 (Doc. # 434), by which it issued its findings and conclusions on that claim, the Court explained its jurisdictional ruling as follows:

> At trial, HRT challenged whether a case or controversy existed with respect to these three patents, and thus whether the Court had subject matter jurisdiction over Vita Craft's claim of inequitable conduct. The Court previously rejected that argument on two occasions, in both its Memorandum and Order of April 13, 2010 (Doc. # 217), and its Memorandum and Order of June 3, 2011 (Doc. # 319). At trial, HRT argued that circumstances had changed since those orders because Vita Craft had recently abandoned its contract claims, by which it had challenged HRT's termination of the license agreements between the parties. HRT argued that those contracts prohibit Vita Craft's post-termination use of confidential information, and that Vita Craft therefore cannot undertake any potentially-infringing activity. The Court, however, accepted Vita Craft's stipulation that the abandonment of its contract claims and the potential for a claim of breach by HRT did not alter its previously-expressed intent to engage in activity that could arguably infringe these patents. The Court thus finds that Vita Craft does continue to have such intent, and that circumstances therefore have not changed in a material way since its prior orders regarding the existence of subject matter jurisdiction.

The Court issued its final judgment on April 27, 2012 (Doc. # 436).

HRT raised this jurisdictional issue yet again in a posttrial motion. By Memorandum and Order of July 20, 2012 (Doc. # 446), the Court rejected HRT's

---

[1] HRT prevailed on that claim. *See* Memorandum and Order of April 24, 2012 (Doc. # 434).

renewed argument as follows:

> Finally, HRT argues that the Court should reconsider its previous rulings that a case or controversy exists with respect to Vita Craft's claims seeking declarations of patent invalidity. HRT again argues that because Section 19 [of the parties' license agreements] prohibits Vita Craft's use of ["Confidential Information"], Vita Craft cannot sell potentially-infringing products in the future, despite Vita Craft's stated intention to do so. The Court has already rejected this precise argument more than once, on the basis that Vita Craft could intend to sell the products even if such sales constituted a breach. HRT has not provided any additional authority suggesting that the contractual prohibition means that a case or controversy cannot exist. Accordingly, there is no basis for the Court to reconsider its previous rulings with respect to subject matter jurisdiction, and HRT's motion is denied with respect to that issue.

In that same posttrial order, the Court opened the judgment to allow HRT to pursue its claim for specific performance of Section 19's requirement that the corporate defendants return contractually-defined "Confidential Information" ("CI") to HRT. The Court conducted a bench trial, and by Memorandum and Order of September 28, 2012 (Doc. # 458), the Court awarded HRT judgment on that claim for specific performance, and it ordered defendants to return all such CI to HRT. The Court issued its amended judgment on October 3, 2012 (Doc. # 459).

On October 26, 2012, HRT filed the instant motion.

## II. **Analysis**

For at least the fifth time in this litigation, HRT argues that the Court lacks subject matter jurisdiction over defendants' declaratory judgment claims by which they have asserted that certain patents and patent claims are invalid.[2] Once this Court's jurisdiction has been established in the case, the Court is "entitled to presume, absent further information, that jurisdiction continues." *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993).[3] HRT argues that the Court should reach a different conclusion this time on this issue of jurisdiction in light of two new circumstances: (1) Mr. Martin's testimony at the specific-performance trial; and (2) the Court's order of specific performance by defendants of Section 19's return-of-CI provision (and defendants' assurances that they will comply with that order). In light of those circumstances, HRT

---

[2]The Court has consistently applied the following statements of law in ruling on HRT's jurisdictional motions. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court has made clear that a party need not engage in the allegedly infringing activity (and risk treble damages for infringement) simply to create a case or controversy under Article III to support a declaratory judgment claim relating to a patent. *See id.* at 128-37. The party seeking the declaratory judgment must have made "meaningful preparation" for the development of the potentially-infringing product for a case or controversy to have arisen. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880-81 (Fed. Cir. 2008).

[3]The Federal Circuit has held, after *Cardinal*, that although the burden of bringing forth such further information logically rests with the party challenging jurisdiction, the actual burden of proof remains with the party seeking to invoke jurisdiction. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007).

asks the Court to vacate its summary judgment rulings on invalidity and to dismiss defendants' declaratory judgment claims.[4]

The Court first rejects HRT's request that the Court vacate its invalidity rulings in their entirety. At summary judgment, defendants asserted the invalidity of the patents not only in support of their declaratory judgment claims, but also as a defense to HRT's claim of infringement of four claims of the '169 Patent.[5] Defendants would be entitled to assert that defense to HRT's claim of past infringement, even without the possibility of a future infringement claim, and indeed the Court granted summary judgment to defendants on HRT's infringement claim on that basis. Thus, there is no basis to vacate the Court's prior analysis of the issue of obviousness or its ruling that at least the four claims in the '169 Patent are invalid.

The first basis for HRT's renewed motion is Mr. Martin's testimony at trial. HRT argues that Mr. Martin's testimony shows that, aside from the sale of retained inventory,[6]

---

[4]HRT has submitted as supplemental authority the Supreme Court's recent opinion in *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013), which involved the effect of a covenant-not-to-sue on the district court's jurisdiction over a claim for a declaration of a trademark's invalidity. Although HRT has not sought reconsideration of the Court's ruling that HRT's covenants are not sufficiently broad to eliminate the possibility of future claims of infringement, it does argue that the Court should be guided by *Already* in granting this motion. The Court has considered the argument but is not persuaded by it.

[5]As noted above, HRT's covenants did not extend to those four claims of the '169 Patent of which HRT asserted infringement.

[6]HRT argues that the sale of existing inventory by defendants would not provide a basis for subject matter jurisdiction because such activity would fall within the scope
(continued...)

8

defendants had no future plans to do anything with the technology licensed from HRT. HRT thus argues that such testimony contradicts Mr. Martin's prior affidavit, on which the Court relied in rejecting HRT's first jurisdictional challenge, and that the Court would have dismissed the declaratory judgment claims if Mr. Martin's affidavit had been truthful at that time.

The Court is not persuaded by this argument. At the trial on the issue of specific performance, Mr. Martin testified that defendants ceased their production activities after HRT terminated the parties' licenses. The Court then, in attempting to restate a question posed by HRT's counsel, asked Mr. Martin whether, aside from inventory already created, "there was anything else going on having to do with this technology." Mr. Martin responded as follows: "No, not to my knowledge, there wasn't anything else going on with those products." The Court's understanding of this testimony is that, when defendants ceased their activities in light of the termination, there was not (past tense) anything else going on—i.e., defendants did not continue to pursue activities under the licenses. Mr. Martin did not comment on or contradict the specific matters contained in his previous affidavit; nor did he testify that defendants did not intend to

---

[6](...continued)
of the covenants-not-to-sue offered by HRT to defendants. As set forth above, however, those covenants did not cover every claim of all three patents, as Claims 18-22, 25-26, and 36 of the '169 Patent were carved out of the covenants to allow for HRT's claim of infringement of a few claims of the '169 Patent. Accordingly, the covenants do not provide any basis to dismiss defendants' claim for a declaration of invalidity as it relates to those excepted claims from the '169 Patent.

engage in activity in the future or that defendants' previous preparations no longer had value. The Court does not conclude that Mr. Martin's trial testimony contradicts or renders less credible his previous affidavit. Accordingly, the single line of testimony by Mr. Martin cited by HRT does not cause the Court to reconsider its prior jurisdictional rulings.

HRT's second basis for its renewed motion is the Court's order requiring defendants' specific performance of the licenses' return-of-CI provision. HRT argues that there is no longer any case or controversy implicating the validity of HRT's patents because the order prohibits defendants from engaging in any potentially-infringing activity in the future.

The Court rejects this argument as well. First, the Court only ordered the return of certain information; it did not prohibit defendants from engaging in potentially-infringing activity. As defendants note, they could, for example, choose to acquire the necessary information from another source to replace the information returned to HRT. The fact that defendants may not have pursued that course yet is immaterial, as defendants could reasonably be expected to await the conclusion of this litigation before making any such decision. Moreover, the steps undertaken by defendants, set forth in Mr. Martin's previous affidavit and cited by the Court in its first analysis of this issue, are not necessarily rendered useless by the order to return CI to HRT. HRT suggests that defendants cannot infringe the three patents without utilizing CI, but it has not attempted to support that proposition by reference to any analysis of the particular patent claims.

10

The Court cannot conclude that defendants cannot infringe the patents without violating the specific performance order.

Finally, even if the specific performance order could be interpreted as prohibiting defendants from possibly engaging in potentially-infringing activity (the Court does not interpret it that way), the Court agrees with defendants that the Court should not lose its properly-invoked jurisdiction with respect to claims resolved by summary judgment by virtue of a subsequent ruling in the case. By analogy, a court does not lose its jurisdiction over a claim seeking a declaration of invalidity by virtue of a judgment of noninfringement, even though such a judgment on its face would seem to eliminate any potential controversy about infringement of that patent. *See Cardinal*, 508 U.S. at 98 ("The Federal Circuit's decision to rely on one of two possible alternative grounds (noninfringement rather than invalidity) did not strip it of the *power* to decide the second question . . . ."); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (*Cardinal* "held that appellate affirmance of a judgment of noninfringement, eliminating any apprehension of suit, does not moot a declaratory judgment counterclaim of patent invalidity"); *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1321 (Fed. Cir. 2001) (district court was obligated to rule not only on claim for declaration of noninfringement, but also on claim for declarations of invalidity and unenforceability; citing *Cardinal* for its holding that "a finding of noninfringement does not moot

11

invalidity or unenforceability defenses when they are raised in a counterclaim).[7] If a noninfringement judgment would not have deprived this Court of jurisdiction over the claim for a declaration of invalidity, then neither should the Court's specific performance order, which could affect the viability of an infringement claim only in a far more attenuated way. HRT has not pointed to any precedent in which a district court lost its properly-invoked jurisdiction over an invalidity claim by virtue of another ruling in the case.

The Court concludes that neither of the new circumstances cited by HRT deprives the Court of jurisdiction over defendants' claims for declarations of invalidity. Accordingly, the Court denies HRT's motion to alter or amend the judgment.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's renewed motion to dismiss or to alter or amend the judgment (Doc. # 472) is **denied**.

IT IS SO ORDERED.

Dated this 4th day of February, 2013, in Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge

---

[7] One of the rationales cited by the Supreme Court in *Cardinal* is that the noninfringement ruling remains subject to appeal. Similarly in this case, defendants retain the right to challenge on appeal the order that HRT argues deprives the Court of jurisdiction.